**Clyde C. MINKS, (Plaintiff) Respondent,**

**v.**

**Lee E. SMITH, (Defendant) Appellant.**

**No. 31277.**

St. Louis Court of Appeals.

Missouri.

April 16, 1963.

H. L. C. Weier, and Dearing, Richeson & Weier, Hillsboro, for appellant.

Raymond S. Roberts, Raymond R. Roberts, and Roberts & Roberts, Farmington, for respondent.

ANDERSON, Presiding Judge.

This is a negligence action instituted by plaintiff, Clyde C. Minks, against Lee E. Smith. In said action plaintiff sought to recover damages for personal injuries sustained as the result of a collision between an automobile being driven by Roy F. Smith, in which automobile plaintiff was a passenger, and an automobile being operated by defendant. The trial below resulted in a verdict and judgment in plaintiff's favor in the sum of $3,000.00. Defendant has appealed from the judgment.

The accident occurred on August 25, 1961, at around 6:45 to 7:00 P.M. Sunset occurred that evening at 6:41 P.M. The automobile belonging to Roy F. Smith, and in which plaintiff was a passenger, was just prior to the accident being driven in

an easterly direction on Highway 32, a two-lane Highway, in St. Francois County. Roy F. Smith was driving about 40 to 45 miles per hour, and as he approached the Wolf Creek bridge he saw the car, which was being driven westwardly by defendant, Lee Smith, come from behind a Nash Rambler station wagon onto the south half of the Highway. Roy Smith then turned his automobile to the right and thereafter collided with defendant's car. The impact occurred at the left front of defendant's automobile, and at the driver's door on the left side of the Roy Smith car. Prior to the collision the parking lights on the Roy Smith car were burning. The lights on defendant's automobile and those on the station wagon, which defendant was in the act of passing, were also on at the time.

As a result of the collision, plaintiff received a strain of the muscles of his back, abrasions of his hands with swelling and tenderness, and a fracture of two ribs. Doctor Grebel estimated that plaintiff could have complaints which would continue for six months to a year.

■ Appellant's first complaint is that "the Court erred in admitting over the objection of the defendant certain testimony of Dr. Clement B. Grebel in which the doctor recited a statement of the plaintiff as to what had happened to him at the time of the accident * * * because such testimony was hearsay and prejudicial." This testimony appears in a deposition of the doctor which was introduced and read to the jury by plaintiff, and is as follows:

"Q. And when Mr. Minks came to you, did he have any complaints and did he give you any history which was elicited by you so that you could better treat him and understand his problems?

"A. Well, he dated his complaints with an auto accident in which he was thrown from the car onto some rocks and apparently he had been tossed back and forth across the front seat of the automobile before being thrown out."

Prior to the reading of the foregoing question and answer, counsel for defendant objected thereto on the ground that the answer embraced hearsay testimony. The court overruled this objection.

The foregoing testimony was hearsay and its admission in evidence over the timely objection of defendant was error, Schears v. Missouri Pacific Railroad Company, Mo., 355 S.W.2d 314; Holmes v. Terminal R. R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W.2d 922, but defendant was not prejudiced by the error since the evidence related to facts over which there was no real dispute. Defendant did not dispute the fact that there was an accident or that plaintiff was a passenger in one of the automobiles involved in it. In fact, defendant testified he saw and talked to plaintiff at the scene of the accident. He also testified that he saw plaintiff on the ground after Roy Smith's car went down the embankment there and thought he was thrown from the car. Defendant's wife, testifying for defendant, stated that Roy Smith's car "skidded around in that chat * * * finally came to a stop", and that she saw plaintiff getting up on the other side of the car. She stated he complained that he "flipped" over against the steering wheel and that the next time he "flipped" over he went out the door. It would appear then that not only did defendant not dispute the facts testified to by the doctor, but also offered evidence of them. It follows that the admission of the testimony was harmless under the circumstances. Lesch v. Terminal R. R. Ass'n of St. Louis, Mo., 258 S.W.2d 686; Corley v. Andrews, Mo.App., 349 S.W.2d 395; Fellhauer v. Quincy, O. & K. C. R. Co., 191 Mo.App. 137, 177 S.W. 795, Civil Rule 83.13, V.A.M.R.

During the examination of plaintiff, who testified as a witness in his own behalf, the following occurrence took place.

"Q. Are you married or single? A. Married.

"Q. Do you have a family. A. Yes, sir.

"Q. How many children? A. We have twelve."

By Mr. Weier (defendant's counsel): "If the Court please, I want to object to any questions here with regard to the number of children that this man has."

By the Court: "Well, the answer is already in. I don't think * * *"

* * * * * *

By Mr. Weier: "I want to object to this question and answer because it's highly prejudicial, and I want to move at this time for a mistrial of the case because of the question being asked and the answer given."

* * * * * *

By the Court: "The objection's overruled. Request denied."

■ In this court appellant contends that "the Court erred in allowing plaintiff's testimony to stand to the effect that he had a family of twelve children." It will be noted that there was no motion to strike upon which to base a ruling withdrawing said testimony from the jury's consideration, nor was there a timely objection to the question asked. An objection to a question, which is not made until after the answer has been given, comes too late and will not be considered on appeal unless the record shows that the witness answered too quickly and there was no time to object. Doherty v. St. Louis Butter Company, 339 Mo. 996, 98 S.W.2d 742; Weinel v. Hesse, Mo.App., 174 S.W.2d 903; Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511.

■ Doherty v. St. Louis Butter Company, supra, is a case squarely in point. There the same information was sought by three questions almost identical with those propounded in the case at bar. After the witness had answered the questions counsel for defendant objected and asked that the testimony be stricken. The Court overruled the objection, and on appeal, our Supreme Court in holding there was no reversible error in the trial court's ruling, said, (98 S.W.2d 1. c. 747)

"The questions asked were not misleading and the answers were responsive to the questions. Appellant waited until the answers were made and then made his objection. An objection, or a motion to strike out evidence, comes too late when not made at the first opportunity. The rule is well stated in 16 C.J. 874, § 2195, as follows: 'Where a question indicates that the response to it will be incompetent or inadmissible, an objection thereto, in order to be available, must be made before the answer is given, as it is too late to object thereafter, unless the answer is given before there is an opportunity to object; a party cannot sit by and allow a question to be answered and then object in case the answer does not suit him. But where incompetent testimony is given in answer to a question which does not necessarily or naturally call for it, an objection thereafter made to such testimony is in time.' "

The record in the case at bar fails to show that the answer complained of was given before defendant had an opportunity to object, and since there was no timely objection the trial court cannot be held to have erred in "allowing plaintiff's testimony to stand". The subsequent request by defendant to discharge the jury and declare a mistrial did not cure the failure to make a proper objection. Collins v. Leahy, Mo.App., 102 S.W.2d 801.

■ Appellant complains of Instruction No. 2 given at the plaintiff's request. This was an instruction on the measure of damages, and is as follows:

"The court instructs the jury that if you find the issues in favor of plaintiff,

you will assess his damages at such sum as you find and believe from the evidence will compensate him for the injuries, if any, sustained by him as shown by the evidence, and in estimating such damages you will take into consideration: the physical injury, if any, inflicted; the bodily pain, if any, and mental anguish, if any, which he has endured and suffered, and which he is reasonably certain to endure and suffer in the future; the character and extent of his injuries, if any; his loss of earnings, if any, and the impairment of his earning capacity, if any; and the sums, if any, which he has expended for medical expenses by reason of such injuries, if any."

The first point made is that by directing the jury to take into consideration "the physical injury" and "the character and extent of his injuries" a double recovery is authorized. We do not believe that a jury would be so misled. While perhaps not artfully drawn, all the instruction does is to direct the jury to take into consideration the injury, its character and extent. We find no merit to the point.

 It is next urged that the instruction is erroneous because it authorized recovery for impairment of earning capacity when there was no evidence of permanent injury, or that his earning capacity would be impaired in the future. The precise language of the instruction in this regard is; "his loss of earnings, if any, and the impairment of his earning capacity, if any." The instruction does not use the word "permanent".

There was evidence that plaintiff's earning capacity was impaired. Prior to the accident plaintiff had been engaged in work as a common laborer doing heavy lifting. This work consisted of cutting stave bolts, skidding and hauling logs. As a result of the accident he suffered muscle strain in the lower part of his back, with the result he could not do heavy lifting, as he previously had done, or operate a chain saw

which required his getting close to the ground. Although he went back to work in a few days he "went back to piddling, pulling nails, raking with a rake and stuff, anything that wasn't heavy." He stated he worked about half time. He testified that at the time of the trial he still suffered pain in his back, but that it was not as severe as it was at first. Dr. Grebel testified that plaintiff's injuries would bother him for a period of six months to a year from the date of the accident, and that the injuries were disabling. Plaintiff testified to the loss of wages in a considerable amount between the date of the accident and day of trial. In our opinion, there was evidence of impairment of earning capacity.

We find that there was no prejudicial error committed by the lower court in the trial of this case. The judgment is affirmed.

SAM C. BLAIR and PHIL H. COOK, Special Judges, concur.