Margaret W. BROWN, Plaintiff-Respondent,

v.

Thomas J. PARKER and John Patrick Brown, Defendants-Appellants.

Nos. 31316, 31317.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1964.

Motion for Rehearing or for Transfer to Supreme Court Denied March 12, 1964.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, Robert E. Keaney, Richard M. Stout, St. Louis, for appellants.

Gragg, Aubuchon & Walsh, Eugene P. Walsh, St. Louis, for respondent.

BRADY, Commissioner.

This action for personal injuries resulted in a jury verdict against both defendants in the amount of $8,000.00. Following the trial court's action in overruling their timely after-trial motions, the defendants brought their separate appeals to this court.

The defendant Parker presents four allegations of prejudicial error. He first contends the trial court prejudicially erred in overruling his objection to certain of plaintiff's inquiries on voir dire. Secondly, he contends the trial court prejudicially erred in giving Instructions No. 2 and No. 4, which he characterizes as confusing, misleading and repugnant. The third allegation of prejudicial error must be recited in order to understand the point made. It reads: "The Court erred in overruling the motion of defendant Parker for a mistrial when plaintiff, while crying, in answering a question regarding the general condition of her health prior to the accident, stated she had six children to care for at home." The last allegation of prejudicial error deals with the trial court's action in refusing to allow counsel to make certain comments during closing argument. The appeal of the defendant Brown is determined by this court's ruling upon his contention that he was the plaintiff's unemancipated minor child at the date of the collision and that the trial court should have therefore sustained his motion for a directed verdict offered at the close of all the evidence. The other allegations of prejudicial error advanced by this defendant need not be stated.

It is obvious that, with the possible exception of the second allegation, these allegations of error will not be determined by facts which directly involve the occurrence of this collision. While it is not obvious, a careful examination of the arguments advanced to support the second allegation discloses that the contentions upon which it is based do not require a minute examination of the factual situation. Accordingly, an extended review and statement of the factual situation is unnecessary. All that is required is a very brief and somewhat broad statement of the facts relating to this accident with a more detailed explanation of what took place during the trial.

The collision which gave rise to this action occurred at the intersection of Grand, Easton and Evans in the City of St. Louis. Grand runs in a generally north-south direction, Easton in a generally southeast-northwest direction, Evans runs in a generally southwest-northeast direction and blends into Easton so that both Easton and Evans cross Grand on the same pavement. There are electric signals controlling traffic on all three streets at this intersection. The defendant Parker's automobile was southeast bound on Easton, while the defendant Brown was north bound on Grand. The collision occurred at about 6:00 p. m. on a hot, dry August day. Parker had entered into Easton at Clara. In obedience to the electric signal controlling traffic traveling in his direction, Parker stopped at the intersection. His evidence was that when the signal turned green, he looked southwardly and saw stopped automobiles on Grand; that he moved approximately eighteen or twenty feet and looked to the north and ascertained there was nothing approaching from that direction; that he then directed his attention straight ahead; and that when he got to the middle of Grand, which is sixty feet wide, he looked to the south again and saw the Brown automobile "right on top of me." The collision occurred in the middle of Grand. Brown's evidence was that the light was in his favor as he entered the intersection without stopping and still in his favor when his automobile was in the middle of the intersection. The evidence also was that Parker and Brown could not have had a green signal at the same time.

Prior to voir dire and out of the hearing of the jury, plaintiff's counsel made the usual inquiry of counsel for both defendants regarding the interest any insurance company might have in the defense of this case. Parker's counsel gave an answer showing the interest of Mid-Continent Cas-

ualty Company. Brown's counsel stated that under a reservation as to coverage he was defending for the Aetna Insurance Company. Plaintiff's counsel stated that he wanted to ask one general question regarding the possible employment of any member of the panel or their financial interest in these companies. Over the objection of both defendants the trial court granted permission to do so provided such a question was placed in the general questions asked of the panel in such a manner as to avoid undue attention being drawn to it. On voir dire the plaintiff's counsel introduced himself, opposing counsel, and the parties and inquired if any of the panel knew any of those persons. He asked if any of the members of the panel knew the plaintiff's doctor. He then asked the panel: "Do any members of this panel have any interest in—or are any of the members of the panel employed by, or have any financial interest in the Mid-Continent Casualty Company, or the Aetna Insurance Company?" Counsel proceeded to ask another question of the panel and then, immediately before asking the panel if any of them had any feeling toward one party or the other in a lawsuit arising from the position of the parties as plaintiff or defendant, counsel stated: "At any rate, I have asked you whther (sic) you know any of the counsel, or any parties to the case, and you stated you did not, or if you know anything about the case by reason of hearing it discussed, or for any reason—that is not unusual, sometimes it happens."

During the direct examination of the plaintiff, her counsel made inquiry as to a bursitis condition, and the plaintiff answered that she had had such a condition " * * * but that didn't have anything to do with this accident." She was then asked, "Prior to this accident, Mrs. Brown, what was the general condition of your health?" Her answer was, "It was fairly good; I did all my own work; I had six children at home to take care of. * * *" At this point a general objection was made by Parker's counsel. Out of the hearing of

the jury and prior to the court's ruling upon the objection, counsel also requested a mistrial. The following colloquy between court and counsel then took place: "MR. STOUT (counsel for Brown): At this time, plaintiff is dabbing at her eyes with her handkerchief, and she has been for twenty minutes sniffling in the presence of the jury, and she has been wiping her eyes —wiping the tears, and this is very prejudicial to our case, and I ask for a mistrial on that ground, also. MR. WALSH (plaintiff's counsel): I asked for a recess before, and the Court indicated it was all right to proceed, and neither counsel objected to what was going on then. THE COURT: Well, she was wiping her eyes with a handkerchief but I don't believe the jury is paying too much attention to that. You did not object to that before, and we went on all right. The objection will be overruled." Returning to the questioning of his client and in the hearing of the jury, counsel asked the following question and received the following answer: "Q (By Mr. Walsh) Directing your attention back to my question, I don't want you at this point to tell me what you were able to do or not able to do, but, generally, with respect to your health: What was the general condition of your health before this accident? A It was fairly good."

There is no contention that the evidence is insufficient to support the giving of Instructions No. 2 and No. 4. The point raised requires a brief statement of the submission made in those instructions. Instruction No. 2 directs a finding for the plaintiff and against the defendant Parker, if the jury finds that Parker ran the red light, was negligent in so doing, and that negligence either directly caused or directly combined and concurred with defendant Brown's negligence as submitted in Instruction No. 3 to cause plaintiff's injury. Instruction No. 4 directs a finding for the plaintiff and against the defendant Brown if the jury finds that Brown ran the red light, was negligent in so doing, and that negligence either directly caused or directly.

combined and concurred with defendant Parker's negligence as submitted in Instruction No. 1 to cause plaintiff's injury. The submissions contained in Instructions No. 1 and No. 3 will be set out later herein.

At the very beginning of his argument plaintiff's counsel stated that he wanted to make clear to the jury why the defendant Brown was sued as a defendant. There was an objection, and during the colloquy that followed plaintiff's counsel stated that he wanted to tell the jury why Brown was sued and intended to say that "* * * after taking the deposition of Parker, Parker gave evidence against Brown, that Brown ran the red light, and certainly plaintiff is entitled to bring that to the attention of the jury." The court sustained the objection. Immediately following the court's ruling and upon returning to his argument before the jury, counsel for plaintiff stated: "At any rate, John Patrick Brown is a defendant in this case; there was testimony given on deposition by Parker, which was taken before Brown was sued, and that evidence was given on the part of Parker, that Brown ran the red light, and that is why Brown is in this case." There was an objection on the ground this violated the previous ruling of the court and a request that these remarks be stricken and the jury instructed to disregard them. The trial court overruled this objection. No error is assigned as to this action, and it is included herein only to place what followed in proper perspective. Counsel for the defendant Parker made the first argument for the defendants. At the opening of his remarks he stated that counsel for Brown "* * * has made a comment on more than one occasion to the effect that Brown was not a defendant at the time Parker's deposition was taken, that in the beginning Mrs. Brown only sued Mr. Parker. I ask you, why would a mother sue her son?" An objection was sustained, the court stating, out of the hearing of the jury, that it was his opinion that the purpose of such an argument was to try "* * * to convey there is insurance in the case."

Parker's counsel did not proceed further in this vein.

The evidence bearing upon the issue with respect to the defendant Brown is that the plaintiff is the mother of the defendant Brown and was a passenger in the automobile he was driving when the collision took place. Brown was born May 20, 1940, and at the date of the collision on August 7, 1960, was twenty years old. Plaintiff first filed her action against the defendant Parker alone and joined Brown by amendment on January 31, 1961. There is no indication as to when service was had on Brown, but his separate answer was not filed until June 15, 1961. He was then twenty-one years of age and was almost twenty-two when trial began on March 5, 1962. During voir dire counsel for plaintiff introduced the parties preparatory to inquiring whether any of the panel knew them. He referred to the defendant Brown in this manner: "The other defendant is John Patrick Brown, who is the son of the plaintiff, Mrs. Margaret Brown, and he lives at 4220-a Natural Bridge, also." Later during the examination of the panel, counsel for plaintiff asked, "Now, would there be any feeling on the part of any member of this panel because, as I indicated to you, that this lawsuit is brought by Mrs. Brown against Mr. Parker, and her son, John Patrick Brown—he is her son; would there be any feeling on the part of any member of this panel, that that may be wrong, to bring a lawsuit against her son—* * *." An objection was made and sustained, and the matter was not pursued further. In answer to the question as to who was driving the automobile she was riding in, the plaintiff answered, "My son, Patrick." At the outset of his cross-examination of the plaintiff, Brown's counsel began to develop the facts as to that defendant's emancipation. He asked plaintiff how old Patrick was, whether he was twenty-one or over on the date of the collision, whether he was then living at home, and if he was then working. There was no objection to any of these questions. Counsel then inquired whether the defendant Brown brought his pay check

home, and a general objection was interposed. The trial court directed the inquiry as to emancipation be conducted out of the hearing of the jury. Counsel for the defendant Brown stated that the evidence that would be given by the plaintiff would constitute an offer of proof by him as to the issue of emancipation. This evidence consisted entirely of answers given by the plaintiff in response to examination by counsel. During that questioning the plaintiff testified that her son lived at home when this accident occurred; that she was the head of the household; that he paid her $10.00 a week and took care of his own cleaning and the cost and upkeep of his automobile; and that she claimed the right as his mother because he was a minor to control his movements and upbringing. The plaintiff also testified that her son was steadily employed and had been working since March, 1958; that, except for the $10.00, she had no control over his pay check; and that she had no control over his working. Her further testimony was that on occasion she asked her son for other money, and he gave it to her; that she used this other money " * * for whatever was necessary in the household * * *"; and that she felt it was good training to let the defendant learn how to handle the money he worked for. In response to a question from the court the plaintiff testified that she treated the defendant just like the rest of the children all of whom, with one exception, were minors and younger than he was. Nothing further appears concerning her treatment of any of the other children. The trial court was referred to the case of Wells v. Wells, Mo.App., 48 S.W.2d 109, and stated: " * * * I don't believe I have the authority to overrule the Kansas City Court of Appeals. I will sustain the objection; this testimony will not be admissible, then. * * *" Accordingly, when the trial proceeded before the jury, no further questions bearing upon the defendant's emancipation were asked of the plaintiff, and none of the foregoing evidence was ever heard by the jury. The only evidence concerning this issue that is properly before us came into the case when the defendant Brown was called to testify during the plaintiff's case in chief. He was cross-examined by his own counsel. After ascertaining the date of his birth, Brown's counsel inquired whether his mother had ever told him that she had parted with the right of control over him. An objection was made and overruled by the trial court. The question was asked again in this fashion: "Q. (By Mr. Stout) Did your mother ever tell you that she had parted with her right of parental control over you or did she at times exercise a little parental control over you, at the time of this accident?" The defendant answered that his mother had exercised control over him. He was then asked if at the time of the collision he made available to his mother all of his earnings. At this point an objection was interposed, and the trial court again overruled it. The answer given was, "Yes, sir, I did."

The defendant Brown's motion for a directed verdict offered at the close of all the evidence was based upon the ground that the plaintiff's own testimony shows the defendant to be an unemancipated minor, " * * * and the law will not permit a parent to recover against an unemancipated minor for negligence of such minor child of such parent."

At the request of the defendant Brown, the trial court instructed the jury that if they found the plaintiff to be the mother of the defendant Brown and further found that on the date of the collision Brown was under twenty-one years of age; that he resided in the plaintiff's home; that the plaintiff had not surrendered "all rights of parental control" over him prior to the date of the collision; that the plaintiff claimed the right to receive and did receive "a portion of the earnings" of the defendant Brown; and that the plaintiff "claimed the right to direct and did in fact direct in a parental manner certain of the activities of said defendant," then Brown was not emancipated, and plaintiff was not entitled to maintain an action against him, and their verdict should be in his favor.

The defendant Parker first contends that the trial court committed prejudicial error when it overruled his objection and permitted plaintiff's counsel to inquire as to the interest, if any, members of the panel had in the insurance companies named. In support of this contention the appellant argues that the panel must first be asked "whether any prospective juror knew of the accident or the parties involved." He contends that only in the event the answer to that question is in the affirmative is there any basis to authorize the subsequent inquiry as to their employment of or interest in the insurance companies involved. The defendant Parker's position on this matter is set forth in his brief in the following language: "Unless it is first determined that a prospective juror knows about the facts he may be asked to try, it would make no difference if he were the president of the insurance company interested in the defense of the lawsuit. Without such a determination first being made, and an affirmative answer being obtained, the asking of the insurance question is wholly unjustified, injects a poison for which there is no antidote and is not asked in good faith."

We are not cited to any Missouri authority to support this contention. Neither are we aware of the existence of any such authority. The statement set out above from the defendant Parker's brief assumes that an employee or officer of an insurance company would know and immediately recognize the names of the parties involved or the facts concerning every case in which that company might be involved. It would not protect against the interest of any such employee or officer who honestly states he did not know of such a case and then, after the trial has progressed, discovers his company's interest.

■ Plaintiff's counsel properly made his preliminary inquiry out of the hearing of the jury, Murphy v. Graves, Mo., 294 S.W.2d 29, and certainly the one question put to the panel did not unduly emphasize the matter. Absent an abuse of discretion by the trial court, this court is not permitted to intervene in such matters. Gooch v. Avsco, Incorporated, Mo., 340 S.W.2d 665; Johnston v. Owings, Mo.App., 254 S.W.2d 993. We find no abuse of discretion presented by this case.

■ The defendant Parker contends that Instructions No. 2 and No. 4 are inconsistent and repugnant. The basis for such a contention is that the undisputed evidence was that only one of the defendants could have disobeyed the traffic signal and to submit these instructions is to allow the jury to find that both disobeyed it. We have stated the submission contained in Instructions No. 2 and No. 4 earlier herein. However, it is axiomatic that all the instructions are to be read together. Moreover, each of these instructions specifically refers to another instruction. Instruction No. 3 directed a verdict for the plaintiff and against the defendant Brown if they found that Brown failed to keep a proper lookout, was negligent in so failing, and that negligence either directly caused or directly combined and concurred with Parker's negligence in running the stop sign as submitted by Instruction No. 2 to cause plaintiff's injury. Instruction No. 1 directed a verdict for the plaintiff and against the defendant Parker if they found that Parker failed to keep a proper lookout, was negligent in so failing, and that negligence either directly caused or directly combined and concurred with Brown's negligence in running the red light as submitted by Instruction No. 4 to cause plaintiff's injury. It is obvious that the effect of these four instructions was to allow the jury to find that either Brown or Parker ran the stop sign and also find that the one who was not negligent in that regard was negligent in failing to keep a proper lookout. Since the jury found against both defendants, it is obvious that they found one defendant negligent in running the stop sign, found the other defendant negligent in failing to keep a proper lookout, and found that these negligent acts combined and concurred to cause plaintiff's injury.

There is no inconsistency, contradiction or repugnancy in such a submission or finding.

■ The general rule is that evidence of family status or the number of people in the family unit is inadmissible. Donze v. Swofford, Mo.App., 368 S.W.2d 917, l. c. 921. The basis for the rule is that such evidence is ordinarily only introduced for the purpose of appealing to the sympathy of the jury, Daniels v. Banning, Mo., 329 S.W.2d 647, l. c. 653, and that a fair trial of the issues cannot be had if irrelevant evidence, calculated to appeal to the sympathy of the jury, is admitted. Donze v. Swofford, supra. A necessary corollary to the rule is the exception that such evidence is admissible where it is relevant or pertinent to any issue raised in the case. Bush v. Anderson, Mo.App., 360 S.W.2d 251; Kingsley v. Kansas City, 166 Mo.App. 544, 148 S.W. 170, l. c. 171. In the instant case evidence the plaintiff had six children did not go to prove or disprove any issue. This is not a case where that exception to the general rule prohibiting such evidence should apply.

■ It should also be noted that this evidence was not elicited by plaintiff but was contained within a response to a proper question. The answer was given before the objection was made. An objection to a question which is not made until after the answer has been given comes too late and will not be considered on appeal. Minks v. Smith, Mo.App., 367 S.W.2d 6, l. c. 8. Where there was no opportunity to object as where incompetent testimony is given in answer to a question which does not necessarily or naturally call for it, an objection thereafter made to such testimony is in time. Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742; Minks v. Smith, supra. In the instant case the objection was not untimely, and since the evidence did not go to prove or disprove any issue, it should have been sustained. (However, see Daniels v. Banning, supra.) This fact is of no assistance in reaching the decision in the instant case for the reason that the defendant does not assign as error the ac-

tion of the trial court in overruling his objection. At the beginning of this opinion we have set out the exact allegation of error raised by the defendant Parker to illustrate that the point he raises goes entirely and solely to the trial court's action in denying a mistrial.

■ It has been held that where improper evidence comes into the case through a voluntary statement of a witness, a mistrial is not a matter of right but is a question calling for the exercise of a sound discretion by the trial court, and in absence of an abuse of that discretion we cannot interfere. Plannett v. McFall, Mo.App., 284 S.W. 850. This is also the rule where the objectionable evidence is contained within counsel's opening statement, Golian v. Stanley, Mo., 334 S.W.2d 88 [1–3]. Certainly this should be true where the improper evidence comes into the case in response to a proper question. We are therefore to decide whether the trial court's action in denying defendant Parker's motion for mistrial constitutes such an abuse of his discretion as to warrant reversal of this judgment.

■ In Daniels v. Banning, supra, the basis·for the rule is stated to be that such evidence is ordinarily introduced only for the purpose of appealing to the sympathy of the jury. That being so, it is difficult to see how that sympathy can be held to go only to the matter of damages and not also go to the question of liability influencing the jury's decision on that issue also. Nevertheless, in the Daniels case where it was held that a direct inquiry as to whether or not the plaintiff had children and an answer that he had two children, properly objected to, did not affect the merits of the action so as to require reversal, the court relied upon the fact that it had ruled against the defendant's contention the verdict was excessive. We note that in the instant case there is no contention of excessiveness. The transcript shows that following the overruling of this objection the question that had elicited this improper evidence was

again asked, and a proper answer given. The matter of the plaintiff's six children was not given any further attention or emphasis during the trial. Under these circumstances we are of the opinion that the trial court did not abuse its discretion in denying defendant Parker's motion for mistrial. Golian v. Stanley, supra.

It should first be noted that the defendant Parker's last assignment of error does not contain any allegation going to the trial court's action in overruling an objection to and denying a request to instruct the jury to disregard the statements made by plaintiff's counsel immediately following the sustaining of an objection to that very statement. In this assignment of error the defendant Parker contends that he was improperly prevented from arguing that the plaintiff had joined the defendant Brown after learning that Brown was solely responsible for the collision. The defendant Parker's statement of this assignment of error begs the question. We are not to be understood as holding that Parker could not argue that Brown was solely responsible for the collision and plaintiff's injuries. Neither do we hold that he could not argue that this was the reason plaintiff joined Brown in the action. We do hold that the manner in which the defendant Parker attempted to make this argument was certainly subject to the inference the trial court stated it was afraid the jury would draw from it, i. e., because Brown had insurance. The materiality of such an argument to the issue of the negligence to either or both defendants may be important in a practical sense, but it is immaterial legally speaking. This is for the reason that our courts have always insisted that the question of insurance is immaterial to the issue of negligence.

■■■■ It requires no citation to substantiate the statement that the latitude allowed counsel upon closing argument is largely a matter for the exercise of the trial court's sound discretion. In the instant case the risk attendant upon emphasizing the matter of insurance leads us to the conclu-

sion that the trial court did not abuse its discretion.

The defendant Brown contends that the trial court erred in not directing a verdict in his favor on the ground that he was the plaintiff's unemancipated minor child on the date of the collision. The plaintiff's first answer to this contention is that the date of the alleged negligent act is not the pertinent time to determine whether the plaintiff can maintain her action. He urges that question should be determined as of the date Brown's answer was filed or the date trial began.

■■■■ The rule in this state is that an unemancipated minor child cannot sue his parent for an unintentional tort, Wurth v. Wurth, Mo., 322 S.W.2d 745. Of course, the same rule would apply to the situation presented by the instant case wherein the parent is the plaintiff and the unemancipated child is the defendant. In either case the basis for the rule is the same and has been stated to be a procedural disability to sue based upon public policy which refuses to allow the family relationship to be disturbed by such actions. Brennecke v. Kilpatrick, Mo., 336 S.W.2d 68, l. c. 73. In the Brennecke case the court quoted with approval the following statement from Prosser, Law of Torts, (2nd Ed.) § 101, pp. 676–677, " * * * 'The courts which deny the action have relied heavily on the analogy of husband and wife, which seems quite inapplicable because of the difference in the common law concept of the relations, and the absence of statutes to be construed. In addition, they have invented much the same variety of unconvincing reasons as in the case of the marital relation. The danger of "fraud" has been stressed, although it is difficult to see why it is any greater, as between the parties themselves, than in any other tort action involving an infant; and likewise the possibility that the defendant might inherit the amount recovered in case of the plaintiff's death, or that the family exchequer might be depleted at the expense of other children—neither of which reasons

seems to outweigh the desirability of compensating the injured one for his damage. * * *,' "

A brief examination of those actions in which one spouse has been allowed to recover for the negligent act of the other will illustrate they afford little assistance to a correct determination of the instant case. This for the reason that in one type of such action the date of the negligent act becomes all important, while in another it is the date the action was filed that has led the court to the result reached. For example, in Berry v. Harmon, Mo., 329 S.W.2d 784, it was held that an action could be maintained by a wife against her husband for injuries she received prior to the marriage and caused by the husband's negligence. See also Hamilton v. Fulkerson, Mo., 285 S.W.2d 642. In the Hamilton case the court at l. c. 647 of 285 S.W.2d said, "It is not apparent to us that the maintenance of an action by one spouse against the other for an antenuptial personal tort would disrupt domestic tranquillity any more than do permitted actions between spouses based on wrongful acts affecting their separate property. * * *" It is apparent that in this type of action the court relied upon the date of the accident. If the parties were not then married, one of them could maintain the action even though they later became married.

An example of those cases that emphasize a different date is Ennis v. Truhitte, Mo., 306 S.W.2d 549, l. c. 550, where it was held that " * * * In this case, the husband being dead and the action having been instituted against his administrator, the reasons of policy upon which the rule is based, the fact of their being husband and wife, have vanished (citing authorities). * * *" It is obvious that in this type of case the court fixed its attention upon the date of suit, and since the reason for the rule of immunity had vanished as of that date, allowed the action.

There are several arguments inherent in plaintiff's insistence that the date the answer was filed or the date of trial is the proper time to determine whether she can maintain her action. First of these is that until the trial is concluded and a verdict returned against the defendant Brown, he has incurred no legal obligation. The argument is that we should not assume that Brown will be held liable for plaintiff's injuries and that it is the determination of liability resting upon a judgment and not the mere possibility of liability arising from the occurrence of a collision that will disturb the family relationship. We cannot agree. If the basis for the rule is sound, the pendency of the action will disturb the family relationship. Moreover, if as here there is a nineteen-months' wait until the case is tried, the opportunities for fraud and collusion are much increased. It is true that, in Hamilton v. Fulkerson, supra, the court held that fraudulent and trivial claims were no more likely to be present in that situation than in any litigation and that, even if present, the court and jury were competent to deal with them. Yet no one can read this transcript and conclude the defendant Brown had reached the almost superhuman plane of emotional control so as not to want his mother to recover for her injuries even if he would be held liable along with another defendant. While the jury and the court must be presumed to have cast aside the fact that Brown had insurance, Brown was surely cognizant of it as he heard his mother's injuries detailed from the witness stand. We think the considerations of public policy upon which the rule prohibiting such actions is based come into play and would exist to disturb the family relationship long before the judgment is rendered.

Also inherent in the plaintiff's contention is the argument that his position is a logical extension of the result reached in Ennis v. Truhitte, supra, and Brennecke v. Kilpatrick, supra. In the Brennecke case it was held that the plaintiff's cause of action arose when the alleged negligent inflicted injury occurred. In that case it was stated that the unemancipated minor labored under a procedural disability which prevented the maintenance of the action and that this proce-

dural disability disappeared upon the death of the parent. The plaintiff's argument is that in the instant case the parent labored under a procedural disability from the date of the accident and that this procedural disability disappeared upon Brown's reaching the age of twenty-one prior to trial. Thereafter, although he might voluntarily submit to the plaintiff's direction and control, he need not do so. Accordingly, the argument proceeds, the basis for the rule prohibiting such actions, the maintenance of the family relationship of parent and child, has vanished and the rule should not apply.

However logical such an argument may be, the same considerations of public policy prevent our adopting it. In the first place the effect of such a ruling would be to allow a parent to sue an unemancipated minor child providing he could keep the case alive until after the child reaches legal age. Such a state of events would clearly violate the sound considerations upon which the rule is based. The family relationship would be disturbed during the time the parent waited for the child to become of age. If the rule is not sound, it should be abolished, but so long as it is in force, the rule should not be avoided by such a subterfuge.

 In the instant case we are not required to choose between the date of the negligent act, Berry v. Harmon, supra; Hamilton v. Fulkerson, supra, as contrasted to the date relied upon in Ennis v. Truhitte, supra, i. e., the date suit was filed. So far as this record is concerned the defendant Brown was an unemancipated minor at either time. It suffices in this case to state that the procedural disability under which the plaintiff labors, Brennecke v. Kilpatrick, supra, is not removed by the fact that at the date the answer was filed and at the date of trial the defendant had reached his majority. That decision is clearly indicated by Brennecke v. Kilpatrick, supra, where it was held that a cause of action existed from the occurrence of the alleged negligent act. It is also compelled by the decision in Taylor v. Taylor, 360 Mo. 994, 232 S.W.2d 382, 1. c.

385, where it was stated that, " * * * The rule is generally not applicable where the child is of age at the time the cause of action arose (citing cases)." Later on that same page the court held that the plaintiff could maintain her action " * * * against her son who was of legal age when the alleged tort was committed. * * * " Regardless of what has been held in analogous situations involving actions between a husband and wife for negligent injury, considerations of public policy prevent such action from being maintained between parent and child where the child was an unemancipated minor at the date of the occurrence of the alleged negligent act. Wurth v. Wurth, supra.

 The plaintiff's second reason why the rule prohibiting such actions should not be applied in the instant case is the contention that the defendant Brown waives the defense that he was an unemancipated minor child by failing to raise that defense by motion within the time allowed for the filing of such motions or by including it as a specific averment within his answer. In actions brought by parents to recover for the services of their minor child or children, it has been held there is a presumption that the right to bring the action is in the parents in the absence of a showing of emancipation or other matter rebutting the presumptive right. It follows that in those cases emancipation and other such matters going to defeat the presumption are held to be matters of defense and must be pleaded. Robison v. Floesch Const. Co., Mo.App., 242 S.W. 421; Beebe v. Kansas City, 223 Mo. App. 642, 17 S.W.2d 608, 1. c. 612; Marx v. Parks, Mo.App., 39 S.W.2d 570, 1. c. 572. Thus, in Hendon v. Kurn, 351 Mo. 980, 174 S.W.2d 806, 1. c. 809 [2–7] it was held that by filing a general denial defendant waived the plaintiff's failure to prove she was the personal representative of her deceased husband. The plaintiff urges that these cases are authority for its position and also relies upon Darr v. Darr, Mo.App., 287 S.W.2d 118. In that case it was held that failure to include in a timely motion or in the answer

a specific averment challenging plaintiff's capacity to sue in her own name waived any such objection, so that the defendant's motion to dismiss the action on the ground that the plaintiff had been judged insane and her suit could be prosecuted only by a duly appointed guardian or next friend was properly overruled. In reaching this result the court in Darr cited Sections 509.140, 509.290, and 509.400, RSMo 1949 (now 1959), V.A.M.S.

■ The defense which the defendant seeks to raise in this case is not one of "infancy." This is true, although, as held herein, it is essential that the one asserting the defense of being an unemancipated minor child be a minor at the date of the occurrence of the negligent act giving rise to the cause of action. We note that this defense is not one specifically set forth in § 509.290, supra, and therefore required to be raised by motion. Neither do we think it to be properly encompassed within the words "and other matters" as those words appear at the beginning of that section; viz., "The following objections and other matters may be raised by motion * * *." This for the reason that the rule is that the one claiming emancipation bears the burden of proof as to that issue. Wurth v. Wurth, supra. In the instant case the plaintiff is the one who must bear the burden. Neither do we conceive of the defense that one is an unemancipated minor child to be of the nature covered by § 509.140, supra. Such a defense does not deal with the "legal existence" of the defendant. Neither does it deal with his "capacity" to be sued nor with the authority of a party to be sued in a representative capacity. Those are the matters specifically referred to in that section of our statutes. The defense of being an unemancipated minor child of the person who seeks to maintain the action is in fact a legal defense to plaintiff's claim of liability. As such § 509.400, supra, specifically provides it is not waived by failure to assert it in the answer.

It follows that as to the defendant Brown the judgment entered in this case should be reversed and the cause remanded to the trial court with directions to enter its judgment in favor of that defendant. The judgment as to the defendant Parker should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the defendant Brown. The judgment as to defendant Parker is affirmed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.