**STATE of Missouri, Plaintiff-Respondent,**

v.

**Leroy SIMMONS, Defendant-Appellant.**

**No. 35382.**

Missouri Court of Appeals,
St. Louis District,
Division 2.

Sept. 18, 1973.

Motion for Rehearing or Transfer Denied
Oct. 10, 1973.

**326**

Robert C. Babione, David V. Uthoff, Public Defender Bureau, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Jefferson City, Brendan Ryan, Circuit Atty., John Fred White, James J. Barta, St. Louis, for plaintiff-respondent.

KELLY, Judge.

Appellant was convicted of Robbery in the First Degree, Section 560.120 R.S.Mo. 1969, V.A.M.S.[1] after a jury trial and was sentenced to 15 years in the custody of the Missouri Department of Corrections by the trial judge under the provisions of Section 556.280. He has appealed.

The points presented to this court for review are that the trial court erred in the following respects:

1. in overruling appellant's motion to suppress the in-court identification;

2. in permitting a police officer to corroborate the identification by the victim by testifying to the conclusion that the victim had previously identified the appellant as a participant in the robbery; and

3. in that the procedure of assessing appellant's punishment on the sole criteria of a prior conviction violated appellant's due process rights and constitutes cruel and unusual punishment.

The evidence, viewed in the light most favorably in support of the verdict of the jury, is that on Saturday afternoon, July 31, 1971, at about 5:25 p. m., Daniel Bennett, the assistant-manager of the Famous-Barr Garage in downtown St. Louis, Missouri, was en route from the cashier's station to the garage office carrying a metal box containing approximately $304.-00 in currency, the property of the May Department Stores Company, Incorporated. He entered an elevator on the fifth level of the garage and when the elevator reached the second level he stepped out of the elevator. Almost immediately he was hit in the head from behind and knocked to the floor by one of the passengers who had been in the elevator with him. A struggle ensued and the metal box and the currency were wrenched from his grasp. Two men participated in the fracas with Mr. Bennett. The larger of the two grabbed the metal box from him and fled while the

---

1. All statutory references are to R.S.Mo.1969.

smaller of the men became entangled with Mr. Bennett and a wrestling match between them followed until that robber too made good his escape. Mr. Bennett had ample time to view both of the men while on the elevator and also while on the floor of the garage during the scuffle. The entire occurrence took almost five minutes. He positively identified appellant as the smaller of the two men. He immediately reported the robbery to the police, and they arrived on the scene within 5 to 10 minutes. He described the robbers, telling the police officers that appellant was 5′8″–5′9″ tall and weighed about 140 to 145 pounds.

Almost three months later, on October 30, 1971, Detective Larry Lade went to the Famous-Barr Garage and showed Mr. Bennett some photographs of some suspects in a robbery which had happened just a few days previously, and Mr. Bennett recognized one of the men portrayed in the photo. Later that same morning Mr. Bennett went to Police Headquarters on Twelfth and Clark Streets where he viewed a line-up, and he selected appellant from that line-up as the smaller of the two men who had robbed him on July 31, 1971.

An evidentiary hearing was conducted by the trial court relative to the alleged prior felony conviction of the defendant, viz., stealing property of a value of more than $50.00, and the court made a finding in accordance with the requirements of Section 556.280 and submitted to the jury the issue of the guilt or innocence of the charge of Robbery in the First Degree, reserving to itself the imposition of punishment.

■ With respect to appellant's first point, a pre-trial hearing was conducted out of the presence of the jury and the trial court made a finding that since the line-up was conducted prior to the filing of an information or the return of an indictment the defendant, although afforded the opportunity to have counsel, knowingly waived said right; that appellant was not required to be furnished counsel at a pre-information line-up, State v. Richardson, 495 S.W.2d 435, 437–438 [1] (Mo. banc 1973); State v. Petrechko, 486 S.W.2d 217, 219 [5] (Mo.1972); State v. Walters, 457 S.W.2d 817, 819 [1] (Mo.1970); Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). He further found that the conduct of the officers both prior to and during the conduct of the line-up was not improper nor the line-up unduly suggestive and that the victim had an independent source for the in-court identification dehors the display of the photograph and the line-up. The evidence both at the pre-trial hearing and in its entirety during the trial supports this finding of the trial court.

This robbery occurred during the daylight hours and under fluorescent lights. The appellant and his accomplice entered the elevator immediately behind Mr. Bennett; they stood on opposite sides of the elevator, facing one another, so he had an excellent opportunity to observe them, and he testified that he did look them in the face. During the scuffling he got a good look at both of the men, and most particularly the appellant while he held him in a headlock on the floor and when the appellant looked back while making his escape. According to Mr. Bennett this all took about five minutes. We find this to be ample evidence to admit the in-court identification and we therefore rule this point against appellant. State v. Richardson, supra, l. c. 438.

Appellant's next point is the admissibility of the police officer's testimony relating to Mr. Bennett recognizing someone (quite obviously the appellant) in a photograph displayed to him on October 30, 1971, at the garage. This evidence was elicited during the State's case in chief while the assistant circuit attorney was interrogating a State's witness, Detective Larry Lade, concerning the officer's visit with Mr. Bennett at the garage on that date. After inquiring of the officer what occasioned

his visit with Mr. Bennett, the following occurred:

"A. We just showed him some photographs of some suspects in a robbery that had just happened there a few days ago or prior to that time.

Q. When you showed him a photograph or photographs, did he recognize anybody in the photograph?

A. Yes, sir.

MR. UTHOFF: Object to that, Your Honor. It's repetitious and calling for a conclusion on the part of this witness.

THE COURT: Overruled.

Q. (By Mr. White) You may answer.

A. Yes, sir."

The prosecutor then proceeded to have the Detective identify the photograph, asked him if he recognized it and to tell the jury what it was. The Detective replied that it was one of the photographs, showing four suspects, that he displayed to Mr. Bennett on the morning of October 30, 1971.

The appellant relies on State v. Degraffenreid, 477 S.W.2d 57, 64 [13] (Mo. banc, 1972)[2] which held that the admission into evidence of the testimony of an officer concerning the extra-judicial identification of the defendant was, *"on the record before us,"* prejudicial error and required that the conviction be reversed and remanded for a new trial.

The State would distinguish the cases on the ground that here much of the cross-examination of Mr. Bennett by counsel for the appellant was intended to impeach the credibility of his identification of the appellant as one of the robbers; and further for the reason that during the appellant's case Mr. Kevin M. O'Keefe, an assistant public defender, testified that on December 1, 1971, at the preliminary hearing and again on January 20, 1972, when both Mr. O'Keefe and appellant's trial counsel interviewed Mr. Bennett at his place of employ-

ment he gave them a different description than that given to the police at the time of the report of the robbery. The State contends further, that this evidence introduced in the appellant's case constituted such impeachment of Mr. Bennett's identification that the testimony of Detective Lade was properly in evidence as an exception to the hearsay rule because it was a prior consistent statement.

It is a general rule that to preserve error for review on appeal it is necessary that an objection be timely made, and usually this necessitates that the objection be made at the earliest possible opportunity in the progress of the case so that the trial judge may have an opportunity to correct, or set right, that which is later to be claimed to be wrong. 4 C.J.S. Appeal and Error § 246, pp. 764–765; Error in the admission of evidence in the trial court must be preserved for appellate review by objection made therein; but to be effective the objection must be in proper form and timely, i. e., made at the earliest opportunity after the objectionable character of the evidence becomes apparent. 4 C.J.S. Appeal and Error § 290–b(1) 1. c. 872. If the objectionable character of the evidence is apparent when it is offered or introduced, because of the question put to the witness, the objection should be made then, for no objection to a responsive answer made to a question not objected to can be urged on appeal. Brown v. Parker, 375 S.W.2d 594, 601 [7] (Mo.App.1964). Where there was no opportunity to object as where incompetent testimony is given in answer to a question which does necessarily or naturally call for it, an objection thereafter made to such testimony is in time. Brown v. Parker, supra. However, for this rule to be considered on appeal the record must show that the witness answered so quickly there was no time to object. The question itself asked for an opinion of the police officer; the witness was permitted to answer and then the objection was interposed. The record is devoid of any indica-

---

**2.** This case came on for trial on March 8, 1972; the opinion in State v. Degraffenreid was filed on March 13, 1972.

tion that this answer, which was responsive to the question, came before the objection could be voiced. "One cannot sit by and gamble on the outcome and, if he loses the gamble, then, for the first time, make a tergiversating objection. If he chooses to gamble he must abide his wager." Brown v. Thomas, 316 S.W.2d 234, 237 [8] (Mo. App.1958). Degraffenreid is therefore not controlling here, nor is this the type of error we must consider under Rule 27.20(c), V.A.M.R. For the aforesaid reasons we rule this point against appellant.

█ Appellant's final point concerns the punishment imposed. He does not deny that it is within the range of punishment permitted under Section 560.135, but contends that the fact of a prior conviction of a felony should not influence the assessment of punishment, and that Section 556.280 does not so provide. The record demonstrates that in assessing and imposing sentence the trial judge did take into consideration the prior conviction of the felony of stealing property of a value of more than $50.00 and referred to the appellant as a "recidivist;" however, we are unable to say that was the only reason behind the sentence imposed in this case. We will not debate the purpose of punishment nor the effectiveness of long or short sentences here; it would serve no purpose. We do find, however, that the punishment imposed is within the statutory limitations and that the apparent severity of a sentence within the limits prescribed by statute does not warrant interference by an appellate court. State v. Vermillion, 486 S.W.2d 437, 441 (Mo.1972). We therefore also rule this point against appellant.

We have reviewed those parts of the record required by Rule 28.02 and find no error.

Having disposed of the appellant's contentions of trial error, the judgment is affirmed.

SMITH, P. J., and SIMEONE, and GUNN, JJ., concur.