OAK BLUFF CONDOMINIUM OWNER'S ASSOCIATION, INC., Plaintiff–Appellant,

v.

OAK BLUFF PARTNERS, INC., and Mariner Pier 31 Yacht Club, L.L.C., Defendants–Respondents.

No. 28764.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 21, 2008.

---

**6.** Hearsay is an out-of-court statement made by someone other than the witness that is offered as proof of the matter asserted. *See*

*Ohlendorf v. Feinstein,* 636 S.W.2d 687, 690 (Mo.App. E.D.1982) (citing *Mash v. Mo. Pac. R. Co.,* 341 S.W.2d 822, 827 (Mo.1960)).

John E. Curran, Osage Beach, MO, for Appellant.

Ronald K. Carpenter, Camdenton, MO, for Respondents.

DON E. BURRELL, Presiding Judge.

Oak Bluff Condominium Owner's Association, Inc. ("Oak Bluff") appeals from judgments denying its claims for dues, fees, and special assessments against Oak Bluff Partners, Inc. ("Partners") and Mariner Pier 31 Yacht Club, L.L.C. ("Mariner") (collectively "Respondents"). The two cases were consolidated for purposes of trial and tried to the court without a jury. We address the two appeals in one opinion as the issues and analysis are identical.

Oak Bluff contends the trial court erred by: 1) allowing Respondents to file an affirmative defense on the day of trial; and 2) overruling Oak Bluff's hearsay objection to testimony regarding the completeness of certain documents. We affirm the judgments.

## I. Factual and Procedural Background

Oak Bluff was purportedly formed pursuant to the "Condominium Declaration for Oak Bluff Condominiums" ("the Declaration").[1] Respondents are each alleged to be the owner of a unit located within the Oak Bluff Condominiums complex. Partners, a dissolved corporation, is the purported owner of Unit 607. Mariner, a limited liability company, is the purported owner of Unit 307.

Oak Bluff filed its petitions against Respondents for unpaid dues and assessments relating to Units 607 and 307 in the "Associate Circuit Judge Division" of the Circuit Court of Camden County. According to Oak Bluff, Article VI, Section 1 of the Declaration requires all unit owners to pay any assessments levied by Oak Bluff that are designed to meet the common expenses of the condominium complex. The Declaration is further alleged to permit Oak Bluff to charge individual owners no more than nine percent per annum interest on any assessments remaining unpaid after 30 days.

Oak Bluff's petitions sought $820.43 from Partners and $1,351.30 from Mariner in unpaid assessments, including interest and late fees accrued up to the date of filing. Relying on section 448.3–116 RSMo [2] and Article IV, Section 7(c)(18) of the Declaration, Oak Bluff also prayed for liens against both units dating back to June 1, 2004.

Partners and Mariner each responded by filing both an answer and a motion to dismiss. In their answers, Respondents denied owning their respective units and Oak Bluff's authority to charge assessments, collect late fees and interest on those assessments, and acquire any lien against the properties. Respondents further contended that Oak Bluff "fail[ed] to state a cause of action upon which relief can be granted" and averred that the issue of the collection of charged assessments was already pending before the Circuit Court of Camden County in an existing, related case ("the circuit case").[3] Finally,

---

1. This information is taken from the transcript as the Declaration itself was not included in the record on appeal.

2. All statutory references are to RSMo (2000) and all references to Rules are to Supreme Court Rules (2007) unless otherwise specified.

3. A Camden County case numbered CV103–289CC in which Oak Bluff and Respondents

Respondents argued that Oak Bluff had been ordered to mediation in the circuit case but had refused to cooperate in the setting of a date for that mediation. The motions to dismiss mimicked paragraphs four and five of Respondents' answers; that Oak Bluff lacked the legal authority to enforce the assessments and had failed to participate in the aforementioned mediation. Oak Bluff filed motions to strike these "affirmative defenses" raised by Respondents.[4]

At the start of the trial, the trial court re-addressed Respondents' previously overruled motions to dismiss. After hearing arguments from all sides, the trial court determined that Respondents had mischaracterized their argument as a jurisdictional issue when it should properly be characterized as an affirmative defense. The trial court then allowed Respondents, over Oak Bluff's objection, to modify their previously-filed answers by interlineation to include an additional paragraph which stated: "Further answering Defendant states as an affirmative defense that Plaintiff is barred from proceeding in this action pursuant to the order of the Circuit Court on 5–1–03 in case number CV103–289CC."

The presentation of evidence then commenced. Oak Bluff's Secretary/Treasurer testified that county land records listed Partners as the owner of Unit 607, and, as of the date of trial, it owed Oak Bluff $2,097.22. She further testified that Partners owed another $3,684.25 for attorney fees accrued during Oak Bluff's attempts to collect the assessments owed. The Secretary/Treasurer then testified that the county land records listed Mariner as the owner of Unit 307, and that Mariner owed Oak Bluff $3,812.15 in assessments, late

fees, and interest plus another $6,248.25 in attorney fees as of the date of trial. Finally, she testified that Mariner owed an additional $350 for "damages that were done to Unit 307 by people that [Mariner] had in there renting."

Clifford Simmons ("Simmons")—the registered agent for Mariners and the last known president of Partners prior to its dissolution—testified on behalf of Respondents. The crux of Simmons's testimony focused on an "Order for Discharge of Receiver" that had been entered in the circuit case ("the Discharge Order"). The Discharge Order was offered and received into evidence at Oak Bluff's request during its case-in-chief. The Discharge Order stated that a court-appointed receiver, Professional Management Group, Inc. ("PMG"), would be discharged from its duty to handle Oak Bluff's financial affairs when certain conditions enumerated within the order were met. Simmons testified that, under the Discharge Order, "he" was exempt from paying any dues and assessments charged by Oak Bluff until the conditions set forth in the Discharge Order had been complied with.

Simmons testified that one of the conditions PMG was required to meet under the Discharge Order before it could be released from acting as Oak Bluff's receiver was that it provide him copies of all documents which reflected the financial affairs of Oak Bluff over the period of time in which PMG had acted as Oak Bluff's receiver, including, but not limited to, "all correspondence, all balance sheets, bank statements, checking account ledgers, ledgers or journals showing the payment of dues, assessments or other charges by unit owners, and copies of all invoices and

---

were apparently co-defendants.

4. Although Oak Bluff filed its motions to strike three months before the date of trial,

the trial court's docket does not reflect any attempt by Oak Bluff to get a ruling on them.

receipts for any disbursements or payments made." Additionally, the Discharge Order stated that PMG was to provide Simmons with "copies of all records of Oak Bluff Condominiums which were delivered to Professional Management Group, Inc., at the inception of its appointment as Receiver." Simmons stated that when he arrived at PMG to pick up his copies of the records, he was told by a representative of PMG that an agent of Oak Bluff had arrived first and picked up its records; thereby leaving his (Simmons's) copies of the records incomplete. Oak Bluff eventually objected to this testimony as hearsay, but the objection was overruled.

During its closing argument, Oak Bluff asked the trial court to award Oak Bluff a total of $6,152.72 against Partners and a total of $10,431.65 against Mariner. The trial court ultimately denied Oak Bluff's claims and entered judgments in favor of Respondents. Oak Bluff's timely motions for new trial were deemed denied by the passage of time and these appeals followed.[5]

## II. Analysis

■ We first note that Oak Bluff failed to provide this Court with a copy of its trial Exhibit 1, the "Condominium Declaration for Oak Bluff Condominiums"—the very document Oak Bluff relies on for its authority to collect any dues and assessments whatsoever from Respondents. It is the appellant's responsibility to compile the requisite legal file and include "all of the record, proceedings and evidence necessary to the determination of all questions to be presented." Rule 81.12(a), (c); *Stephens v. Brekke*, 977 S.W.2d 87, 91 (Mo.App. S.D.1998). "Failure to comply with the rules of appellate procedure is a proper ground for dismissing an appeal." *Brown v. Ameristar Casino Kansas City, Inc.*, 211 S.W.3d 145, 146–47 (Mo.App. W.D.2007) (citing *Shochet v. Allen*, 987 S.W.2d 516, 518 (Mo.App. E.D.1999)). In spite of this material omission, we choose not to dismiss the appeal on that basis and will review Oak Bluff's two points relied on in the order presented.

### Issue One: Amendment of Answer

Oak Bluff's first point challenges the trial court's decision to allow Respondents to amend their answers on the morning of trial to include an affirmative defense. In particular, Oak Bluff argues the trial court erred in allowing the amendment because section 517.031 requires all affirmative defenses to be filed in writing no later than the return date and time shown on the summons.

■ Whether to grant leave to amend a pleading is a discretionary matter. Rule 55.33(a); *Simpson v. Strong*, 234 S.W.3d 567, 575 (Mo.App. S.D.2007). We review the trial court's decision for an abuse of that discretion. *Simpson*, 234 S.W.3d at 575.

■ Section 517.031 states that "[a]ffirmative defenses, counterclaims and cross claims shall be filed in writing not later than the return date and time of the summons *unless leave to file the same at a later date is granted by the court.*" Section 517.031.2 (emphasis added). Leave to amend a pleading "shall be freely given when justice so requires." Rule 55.33(a). In determining whether an amendment should be allowed, the trial court is to consider the following factors:

(1) the hardship to the moving party if leave to amend is denied;

---

5. Under Rule 81.05(a)(2)(A), post-trial motions not ruled on within 90 days are deemed to be overruled.

(2) the reasons for the moving party's failure to include the matter in the original pleading;

(3) the timeliness of the application;

(4) whether the amendment could cure the inadequacy of the moving party's pleading; and

(5) the injustice to the nonmoving party should leave be granted.

*Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 327 (Mo.App. W.D.2000) (citing *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 612 (Mo.App. E.D.1998)). "Prejudice is not measured by whether one party or the other would stand to suffer financial loss as a result of the court ruling. Instead, prejudice [suffered by the non-moving party] is measured by whether a party is deprived of a legitimate claim or defense because the motion for leave to amend caught that party by surprise after it had developed its strategy." *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 619 (Mo.App. W.D.2006).

In *Rose v. City of Riverside*, 827 S.W.2d 737 (Mo.App. W.D.1992), the trial court granted summary judgment in favor of the defendant because the applicable statute of limitation had run. *Id.* at 738. The plaintiffs argued on appeal that because the defendant failed to list the statute of limitation argument as an affirmative defense in its original answer, the defendant had thereby waived its use of the defense. *Id.* at 739. The Court found, however, that the defendant's use of the statute of limitation argument in its motion for summary judgment provided ample notice to the plaintiffs as to the existence of the defense and thereby effectively negated any possible prejudice. *Id.* In so holding, the Court also determined that it *would* constitute an abuse of discretion if the trial court were to deny the defendant's motion for leave to amend its answer to include the defense that would inevitably be forthcoming if the Court were to remand the case. *Id.*

■ Here, Oak Bluff—by its own admission—was well aware of the substance of the challenged affirmative defense because Respondents had raised the Discharge Order as a bar to Oak Bluff's claim in both paragraphs four and five of their original answers and in their motions to dismiss. Oak Bluff also never sought a hearing prior to trial on its previously filed motions to strike what it had already identified as the "affirmative defenses" contained in paragraphs four and five of Respondents' answers. As Oak Bluff was not unfairly surprised as a result of the amendment, no abuse of discretion occurred. Point one is denied.

### Issue Two: Admission of Hearsay Testimony

Oak Bluff's second point contends the trial court erred in overruling its delayed hearsay objection to Simmons's testimony about whether he had received a complete set of documents from PMG.

■■ To preserve an alleged error relating to the overruling of an objection, "it is necessary that an objection be timely made, and usually this necessitates that the objection be made at the earliest possible opportunity in the progress of the case so that the trial judge may have an opportunity to correct, or set right, that which is later to be claimed to be wrong." *State v. Simmons*, 500 S.W.2d 325, 328 (Mo.App. E.D.1973). An untimely objection amounts to a waiver of that objection. *Galovich v. Hertz Corp.*, 513 S.W.2d 325, 336 (Mo.1974). Only when there is no opportunity to object to questionable testimony—e.g., the witness responded too quickly to an improper question for an objection to be immediately interposed—is

a later objection permissible. *Simmons,* 500 S.W.2d at 328.

■ The testimony at issue occurred during Oak Bluff's own cross-examination of Simmons.

Q. And you in fact did pay—and I'll refer to them as PMG, but it's Professional Management Group. You did in fact pay them half the copy costs for the documents that you picked up at their office?

A. I paid them, but you got the records before I did.

Q. So you paid them without picking up copies of the records?

A. No. The records were not there because you went and got them before I got them. You got some of the records before I got them.

Q. *Did PMG represent to you that those documents that you picked up were the entirety of the documents they had?*

A. No. They represented that you had picked them up prior to that.

Q. Sir, if you give me just a second. Mr. Simmons, do you remember when you picked those documents up from Professional Management?

A. No—No—No, sir, I don't. All I remember is as I said, that *they said part—some of the records had been picked up before I got the records that I got.*

[Counsel for Respondents]: But only—only speak when you're responding to a question. Okay?

By [Counsel for Oak Bluff]:

Q. Mr. Simmons, isn't it true that that was in—that was on December 20, 2006?

A. I don't have any idea. But that's what the other law case is about, is those records.

Q. So you don't remember when you picked up those documents from PMG?

A. I couldn't tell you the exact date. No, sir.

Q. Can you tell me what records were in there?

A. All I know that they were incomplete.

[Counsel for Oak Bluff]: Your Honor, at this point I'd like to strike—or move to strike the Defendants' response—or Mr. Simmons' response as being hearsay. (emphasis added).

The testimony at issue was objectionable as hearsay because it was offered by Respondents as proof that Oak Bluff had not complied with the terms of the Discharge Order.[6] However, Oak Bluff did not immediately object to Simmons's statement. In fact, Oak Bluff asked three more questions and received three more answers before it finally made any objection to the hearsay testimony and asked the trial court to strike it. Oak Bluff offers no explanation for its delay in objecting, nor does it attempt to demonstrate that the first available opportunity for an objection was *not* immediately following Simmons's first offensive answer. As Oak Bluff was doing the questioning, it was not even subject to any hindrance in proffering its objection due to the opposing party's pace or cadence. Oak Bluff also appeared to be inviting a hearsay response from Simmons when it asked: "Did PMG represent to you that those documents that you picked up were the entirety of the documents they had?"

---

6. Hearsay is an out-of-court statement made by someone other than the witness that is offered as proof of the matter asserted. *See* *Ohlendorf v. Feinstein,* 636 S.W.2d 687, 690 (Mo.App. E.D.1982) (citing *Mash v. Mo. Pac. R. Co.,* 341 S.W.2d 822, 827 (Mo.1960)).

Because Oak Bluff failed to make its hearsay objection at the first available opportunity, this Court finds no error by the trial court in overruling the untimely objection. Oak Bluff's second point is dismissed and the judgment of the trial court is affirmed.

LYNCH, C.J., and RAHMEYER, J., Concur.