**STATE of Missouri, Respondent,**

v.

**Paul A. EDWARDS, Appellant.**

**No. 56783.**

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Hammond C. Woods, Woods, Raymond & Raymond, Kansas City, for appellant.

HOLMAN, Presiding Judge.

Defendant was charged with the offense of statutory rape. See § 559.260.[1] Under the provisions of S.Ct. Rule 26.01(b), V. A.M.R., the defendant, with the assent of the court, waived a jury and was tried by the court. He was found guilty and his punishment was fixed at imprisonment for a term of two years. Defendant has appealed. We affirm.

The prosecutrix herein will be referred to by her given name, Lorena. On January 15, 1970, she was 14 years old and attended North Gate Junior High School in Clay County. On that day she and three of her classmates, Melody, Diane, and Connie left school without permission because it was Martin Luther King's birthday and some of the other schools were having a holiday. They went to Melody's home where they borrowed slacks from her and changed into them. They then got a ride into Kansas City and visited for a time at the home of one of Melody's friends. Melody stayed at her friend's home and the other three went to a nearby drugstore where Diane called defendant, who lived at Houston Lake in Platte County, and asked him to pick them up and take them back to school. None of the girls knew defendant, but Diane was dating a boy who spent considerable time at defendant's home, and she therefore had his telephone number. Defendant met the three girls and took them to his home so that they could change clothes because they were not permitted to get on the school bus wearing slacks. Lorena testified that after they arrived at defendant's home the girls changed their clothes in the bathroom; that defendant showed them a badge (which he had found) and said that he could turn them in because he was a juvenile officer; that they sat around and listened to records and defendant and each of the girls drank a can of beer; that she told Diane that she was kind of scared and nervous because they had "played hooky" and Diane gave her two nerve pills which she took and which made her "kind of dizzy"; that she said something about wanting to leave and defendant said that "one of us was going to

1. Statutory references are to RSMo 1969, V.A.M.S.

have to pay him for coming over and picking us up," which she understood to mean that "one of us was going to have sex with him"; that Diane said that she couldn't because she liked his best friend; that defendant then took her (Lorena's) hand and pulled or led her into the bedroom; that he then pushed her against the wall and started kissing her, after which he removed all of her clothes and all of his clothes, and they got on the bed; that defendant then made three efforts to get his sex organ into her vagina and was able to insert it about an inch; that because she was a virgin he finally stopped trying and told her that it was impossible for him to have intercourse with her; that after they dressed and came out of the bedroom he took them to meet the school bus. Lorena also testified that a couple of days later she told the girls who had been with her about what defendant had done in the bedroom; that she did not tell her mother until about a month later when they had to go see Mrs. Hook, the juvenile officer, about the fact that she had "played hooky."

Connie testified in the case and related the events of the day about the same as did Lorena. She also stated that defendant had said that one of them would have to pay him for having picked them up, which she understood meant "having sex," and that defendant then took Lorena by the hand and took her into the bedroom where they remained about 15 or 20 minutes; that when they came out defendant was combing his hair; that after they got on the bus Lorena told her something about having had intercourse with the defendant.

Defendant, who had been previously married and divorced, testified that he was 24 years old on the date in question; that he had had two-and-a-half years of college and had planned to be a minister, but at that time was not in school and was working nights at a filling station. He admitted that he had picked up the girls and had taken them to his home. He denied taking Lorena into the bedroom and stated that he never had intercourse with her. He did testify, however, that he pulled Lorena up from the divan where she was sitting and walked with her into the hallway where he put his arm around her and kissed her.

The contention of defendant on this appeal is that there was not sufficient believable evidence to support a finding of guilt and that the court should have found him not guilty.

"It is provided in S.Ct. Rule 26.01(b) that the findings of the court 'shall have the force and effect of the verdict of a jury.' We therefore review this case in the same manner as though a verdict of guilty had been returned by a jury, and hence, if there was substantial evidence to support the finding, it should be affirmed." State v. Haislip, Mo.Sup., 411 S.W.2d 81, 83. It is obvious that if the testimony of Lorena is true defendant is unquestionably guilty. Defendant says, however, that her testimony is contradictory and contrary to human experience and is therefore unworthy of belief. He relies on the rule that "[t]he uncorroborated evidence of the prosecutrix will sustain a conviction of incest or rape, but when the evidence of the prosecutrix is of a contradictory nature, or when applied to the admitted facts in the case her testimony is not convincing but leaves the mind of the court clouded with doubts, she must be corroborated, or the judgment cannot be sustained." State v. Quinn, Mo.Sup., 405 S.W.2d 895, 897.

We will discuss the efforts of defendant to impeach the testimony of Lorena although, as hereinafter discussed, we do not think the quoted rule is applicable because we have the view that her testimony was corroborated. At the outset we should state that Lorena's testimony at the trial was not contradictory in any important respect. Defendant did impeach her testimony to some extent by reading the following questions and answers from a deposition taken before the trial: "Q (by Mr. Woods). Did you make this answer? 'So I took the pill and my head started getting dizzy and from then on I really

couldn't tell you what was going on.' Did you make that answer? A (the witness). Yes. Q. Question, 'So you don't recall anything that happened after you say he sat you down on the bed?' Answer. 'Yes, well ——.' * * * So my next question was, 'So you don't know what happened after that?' and the answer was 'Not really.' Did you make that answer? A. Yes." At trial she explained that deposition testimony by saying, "I was going to explain it and you kept on asking questions and I didn't have time to explain," and also that she had since "had time to think about it." We do not think the effort to impeach impaired Lorena's testimony in any substantial respect.

■ Defendant says the absence of medical testimony concerning the claimed penetration and Lorena's failure to report the incident casts doubt on the truth of her testimony. Under the situation here presented we cannot understand how medical testimony would have been helpful to the court in any manner. Also, the fact that Lorena did not immediately report this occurrence to her mother or to the authorities is of no consequence. In a case of statutory rape when the prosecutrix consents it is not contemplated that she will be outraged and will make complaint. Defendant also suggests that Lorena fabricated this story because it was considered a "badge of honor" for girls in school circles in that area to have had intercourse. There is no evidence to support that premise. All the evidence is to the contrary as relates to girls of Lorena's age. This contention is based on the cross-examination testimony of Lorena's mother to the effect that her son had told her that there was some indication that the girls in Senior High School (not the school Lorena attended) considered it the "in thing" to have "had sex." As indicated, this suggestion is without merit because not supported by evidence and because, in any event, it is not reasonable that any such alleged fabrication by Lorena would be pursued to the extent of telling her mother and the juvenile officer about the occurrence.

■ We have concluded, as did the able and experienced trial judge, that Lorena's testimony is credible, probative, and consistent with human experience.

Moreover, we have the view that Lorena's testimony is corroborated. Of course, it is seldom that there will be eyewitnesses to the actual act of intercourse. But here, it should be noted that Connie testified that defendant said someone would have to pay him for picking them up, which she understood meant "having sex," and that he then "grabbed Lorena by the hand and took her into the bedroom" where they stayed for 15 or 20 minutes; that when defendant came out he was combing his hair; and that when they got on the school bus Lorena told her "something about her and Paul having sex." We also think it is significant that defendant testified that "I pulled her up [off the couch] and I put my arm around her and she put her arm around me and we walked into the hallway"; that they went down the hall to get away from the others and stood in the bedroom door where he kissed her. All of this testimony tends to lend support to Lorena's version of the occurrence.

We have considered all of the cases cited by defendant but do not find them to be helpful because of the wide variance of the facts therein as compared with those in the case at bar. However, the cases of State v. Ball, Mo.Sup., 133 S.W.2d 414, and State v. Wood, 355 Mo. 1008, 199 S.W.2d 396, cited by the State, clearly support our conclusion in this case.

In summary, we hold that the finding of guilt by the trial court is supported by substantial credible evidence and that our minds are not "clouded with doubts" concerning Lorena's testimony.

Judgment affirmed.

All concur.