**STATE of Missouri, Respondent,**

v.

**Hardin DANIELS, Jr., Appellant.**

Nos. 56991, 56992.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1972.

Motion for Rehearing Denied Dec. 11, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Gerard K. Sandweg, Jr., St. Louis, for appellant.

HOLMAN, Presiding Judge.

Defendant was charged with the offense of robbery in the first degree by means of a dangerous and deadly weapon. See §§ 560.120 and 560.135.[1] In a separate information he was charged with attempting to obtain merchandise of a value of $100 or over by fraudulent use of a credit card. See § 561.415. Since the cases were inter-related it was agreed that they be consolidated and tried together. Under the provisions of Supreme Court Rule 26.01(b), V.A.M.R., the defendant, with the assent of the court, waived a jury and was tried by the court. He was found guilty of both offenses and his punishment was fixed at imprisonment for a term of six years for the robbery and two years for the credit card offense, the sentences to run concurrently. Defendant has appealed.

Clyde Carr testified that he was an employee of Abex Corporation which is located at 3300 Goodfellow in St. Louis, Missouri; that while at work on Saturday, August 1, 1970, at about 3 o'clock p. m., he saw a 1969 Buick in the driveway, with three occupants; that two of the men got out of the car and went into the machine shop; that as they walked near him he bent over to pick up a piece of lumber and felt some-

---

1. Statutory references are to RSMo 1969, V.A.M.S.

one grab him around the waist and run their hand in his pocket; that he then turned around and saw defendant with a .25 caliber revolver in his hand; that he became angry and called defendant a black s. o. b., whereupon defendant hit him in the face with the gun; that he grabbed defendant and they wrestled for a short time, then both of the robbers ran, taking his wallet containing $325.00 and a Bankmark credit card; that he pursued the men and they jumped in the car and left; that he was unable to get the license number on the car because it was covered with a rag. He reported the matter immediately to the police, giving a description of the men. A few weeks later the police called and asked him to view some men in a lineup at the police station; that he viewed the lineup and identified the defendant as one of the men who engaged in the robbery; that at the time he identified defendant he knew he had not been considered a suspect but nevertheless was certain he was the one who robbed him. This witness identified the credit card that had been stolen, and a sales slip to which his name had been signed but stated that the signature thereon was not his.

David Diley testified that he operated the Fox Card and Camera Shop located on Easton Avenue in St. Louis; that about 4 p. m., on August 1, 1970, three men came in his store and wanted to buy a Polaroid camera which cost $199.95; that they presented a Bankmark credit card issued to Clyde A. Carr; that one of the men signed the name "Alvin Gordon" to the charge slip. Diley explained that it had to be signed by Clyde Carr and that one of the other men then signed the name "Clyde Carr." He then tried to telephone Bankmark to get the credit OK'd, but the line was busy and so the third man, later identified as defendant, said "I will go get my own credit card and come back and get the camera"; that all of the men then left and did not return. Diley reported the matter to Bankmark and the police came to investigate. Four or five days later the police showed him several pictures and he recognized Alvin George as one of the three men who was in his shop. About two weeks later the police called him to come to the station and view a lineup; that there were four men in the lineup and he recognized two of them as having been in his store; one was Alvin George and the other the defendant. This witness identified defendant in court, saying that he was certain that he was one of the men who was in his store.

A police detective, Charles Horn, testified that on August 1, 1970, one Alvin George called the police department and reported that two men had hired him to drive a car to 3300 Goodfellow on that day; that the two men got out of the car and entered the place of business there, and a short time later came running out and pointed a gun at his head and made him drive them away; that the police accepted George's story and did not arrest him; that a short time later, when he was investigating the Fox Card Shop credit card matter, he included a picture of Alvin George among the number submitted to Mr. Diley; that Diley picked out the picture of Alvin George as one of the men who had attempted to use the credit card to buy a camera in his shop on August 1; that they were unable to locate and arrest George until August 25; that they put him in a lineup and had Mr. Diley come to the station to view it; that in order to make up the lineup they took Hardin Daniels (defendant) out of the holdover; that Mr. Diley then identified both George and Daniels as having been in his shop attempting to buy the camera. Detective Horn explained to Mr. Diley that Daniels was not a suspect but Diley stated positively that he was one of the men; that he then had defendant brought in again and had Diley view the lineup a second time and he again identified him. He then called Clyde Carr and had him view a lineup which included the defendant, and Mr. Carr identified him as the man who held the gun at the time he was robbed on August 1.

The defendant testified that he was 18 years old; that at about 5:30 p. m., on August 25, he went to the Camelot Hotel to obtain a watch, or collect the value of same, from Jean French, his former girl friend; that when he arrived the manager of the hotel told him that Jean did not want to see him; that he then went out and called the police; that when the police arrived, he, the manager, and the police all went up to Jean's room; that the police told them they would have to work out the dispute among themselves or they would have to take both of them to the station; that he told them he would rather be taken to the station; that when they arrived at the station he stayed up front standing around, and they took Jean back and had her talk to the sergeant; that about five minutes later the police came to him and said they were going to book him for common assault and burglary, and that they then put him in a cell; that a little later they took him out and put him in a lineup; that he engaged in three lineups that evening, and that he then learned that he was being booked for first degree robbery.

In an effort to establish an alibi defendant testified that on August 1 he was at home until 11:30 in the morning; that he then went to Richmond Heights to the home of Jean French; that the two of them later picked up another girl, Carolyn White, and the three went to Steinberg Skating Rink; that they arrived there at about 5:30 p. m., but were unable to skate because they did not have the required identification for renting skates; that they watched the skating for a time and then left about dark and, after leaving Carolyn at her home, arrived at Jean French's home where he stayed until about one o'clock a. m.

The first three points briefed may be combined. They are that the identification of defendant should have been excluded from evidence as a product of an illegal arrest (without a warrant or probable cause), and because the lineup was held in the absence of counsel. In support of these contentions defendant has cited the constitutional provisions and cases usually cited in support of such points. However, on the point that the lineup was the product of an unlawful arrest defendant relies mainly on the Fourth Amendment to the U. S. Constitution which prohibits unreasonable searches and seizures. Cases construing the Fourth Amendment, such as Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, have considered questions of this nature to be analogous to search and seizure questions.

■ ■ We have the view that we need not determine the merits of the issues concerning the admissibility of the lineup identification testimony. This for the reason that defendant has waived the right to raise these quesions by failing to object to such evidence. He did not file a pretrial motion to suppress, even though defendant and his counsel were fully aware of the fact that the evidence would be offered at the trial. Also, at the trial, three witnesses testified concerning the lineup without any objection whatever being interposed. It is well settled in this state, both as to the products of alleged illegal search and seizure and as to identification testimony, that appropriate objection thereto must be made in order to preserve the point for appellate review. See State v. Brownridge, Mo.Sup., 459 S.W.2d 317 [8]; Schleicher v. State, Mo.Sup., 483 S.W.2d 393 [1]; State v. Fields, Mo.Sup., 442 S.W.2d 30 [3, 4]; State v. Franklin, Mo.Sup., 448 S.W.2d 583 [2]; State v. Barron, Mo.Sup., 465 S.W.2d 523 [1]; and State v. Johnson, Mo.Sup., 472 S.W.2d 393 [2, 3]. The stated rule is obviously sound because, in the absence of some objection, there was no occasion for evidence to be presented concerning probable cause for arrest or waiver of counsel at the lineup. The point relating to illegal arrest was never raised in the trial court. The complaint that defendant did not have counsel at the lineup was mentioned for the first time in the motion for new

trial, but that came too late to preserve the point for review.

■ The final contention briefed is that the evidence was insufficient to support the convictions for the crimes charged. This contention is without merit. It is provided in S.Ct. Rule 26.01(b) that in a jury-waived criminal case the findings of the court shall have the force and effect of the verdict of a jury. We therefore review the evidence in the same manner as though a verdict of guilty had been returned by a jury and hence if there was substantial evidence to support the finding it should be affirmed. State v. Edwards, Mo.Sup., 476 S.W.2d 556. Both Clyde Carr and David Diley had a good opportunity to observe defendant at the time the offenses were committed. They each identified him in separate lineups 25 days later. The trial court obviously believed that testimony and it was sufficient to support its findings. The defendant gave alibi testimony but it was not corroborated by either of the girls whom he stated were with him on the afternoon in question. It is understandable that the court did not believe that testimony.

■ There is one further question which we believe should be considered *sua sponte*. Defendant was found guilty of a felony on the credit card charge. We have concluded that under the statute he could only have been guilty of a misdemeanor. Section 561.415 reads, in part, as follows:

"Any person, firm or corporation, who, with intent to defraud or to aid and abet another to defraud any person, firm or corporation of the lawful charge, in whole or in part, for any goods, wares or services, shall obtain, or *attempt to obtain, or aid and abet another to obtain or attempt to obtain,* any goods, wares or services by charging such goods, wares or services to any existing telephone number, credit card, credit card number,

or other credit device, without the authority of the subscriber thereto or the lawful holder thereof * * * is guilty of a misdemeanor and shall, upon conviction, be punished by a fine not to exceed five hundred dollars or be confined in a county jail for not more than one year, or by both such fine and confinement. A person convicted under this statute shall, *when the value of the goods, property or services obtained* in a single transaction * * * exceeds one hundred dollars, be punished by a fine of not more than five hundred dollars, or by confinement in the county jail for not more than one year, or by such fine and confinement or by imprisonment by the Department of Corrections for not more than five years." (Emphasis ours.)

Defendant was charged with and found guilty of an *attempt* to obtain merchandise of a value of more than $100. It is our view that any attempt, regardless of the value of the merchandise, is a misdemeanor under the statute. The more severe felony punishment is only applicable when the merchandise is actually obtained.

We accordingly rule that in the credit card case there were no errors on the issues relating to defendant's guilt, but that since defendant was guilty of a misdemeanor the punishment assessed cannot stand. The judgment in that case (No. 56,992) is reversed and the cause remanded with directions to the trial court to resentence the defendant in accordance with the misdemeanor punishment provisions of the foregoing statute.

The judgment in the robbery case (No. 56,991) is affirmed.

FINCH, C. J., and SEILER, J., concur.

BARDGETT, J., not sitting.