**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Willie STAMPS, Defendant-Appellant.**

**No. 37172.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

June 13, 1978.

Motion for Rehearing and/or Transfer
Denied July 17, 1978.

Application to Transfer Denied
Sept. 12, 1978.

---

Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Presiding Judge.

Defendant was convicted of forcible rape and sentenced by the trial court under the Second Offender Act to life imprisonment. On appeal, defendant raises the following points of alleged trial court error: (1) admitting the testimony of a state's witness regarding an unrelated incident near the scene of the crime before it occurred; (2) overruling defendant's motion for acquittal at the close of the State's case; (3) denying a request for mistrial on the basis of the prosecutor's reference to defendant's race; (4) denying a request for mistrial on the basis of the prosecutor's reference to defendant's religion; (5) permitting the prosecutor in closing argument to argue circumstantial evidence as a factor in the case; (6) permitting the prosecutor to make reference to items of defendant's clothing not in evidence.

Defendant's assertions are wholly without merit, and we affirm the conviction.

The facts of this crime are particularly facinorous. The victim of defendant's attack was a fifty-eight year old patient at a hospital located in St. Louis County. In the early morning on the day of the assault, the victim had undergone serious abdominal surgery for a colostomy closure. Later in the day she had been taken from the surgical recovery room to her own room on the sixth floor of the hospital. She was under sedation with an intravenous tube attached to her arm and a nasal gastric suction tube through her nose and extending down her throat. About 5:00 in the afternoon, she was awakened by the movement of a man at the side of her bed. The intruder—positively identified as defendant—leaped on the victim's bed, pushed on her throat and threatened to kill her with a knife if she made a noise. The defendant then raped the victim causing her intense pain. A nurse entered the room, interrupting defendant's evil assault. Defendant jumped from the bed, fumbled with his trousers, picked up a brown paper bag on the dresser and hurried out of the victim's room. The victim informed the nurse that she had been raped, and the nurse pursued the defendant into the hallway where she saw him moving toward an emergency exit. The nurse called to a passing physician— Dr. Hoff—that her patient had been raped by the defendant who was trying to leave the floor. Dr. Hoff caught hold of the defendant and was leading him by the arm to the nurses' station when he broke away and ran down a stairwell with Dr. Hoff in close pursuit. Dr. Hoff did not lose sight of the defendant as he chased him down three flights of stairs into the arms of two security guards who had been summoned and were going up the stairs. When caught, defendant possessed the brown paper bag he was seen carrying from the victim's room. His belt was unbuckled and his trousers' fly was open. The victim positively identified defendant as her assailant, and the nurse, Dr. Hoff and the security guard who caught him were also unequivocal in their identification of defendant.

Defendant maintains that he was at the hospital to visit his common law wife, Ther-ester Blackman, who was a patient, and that he was apprehended in a case of mistaken identity. The only testimony in his behalf came from Ms. Blackman who stated that she did not see defendant on the day of the rape. In his opening argument, however, counsel for the defendant stated the evidence would show that when defendant entered the hospital to visit Ms. Blackman it was the height of visiting hours. He explained that defendant waited for an elevator, but they were so overcrowded he decided to walk up the stairs to Ms. Blackman's room on the fifth floor. He maintains while in the stairwell defendant was mistakenly apprehended as the rapist.

Defendant's first point of error relates to the testimony of Julie Flynn, an employee of the hospital on duty the day of the rape. Ms. Flynn testified that at 4:00–4:15 P.M., she took an elevator from the ground to the seventh floor. On the first floor, a male, later identified as defendant, entered the elevator and accompanied Ms. Flynn to the seventh floor. A few minutes later when she got back onto the elevator, defendant entered with her. There was no objection to any of the foregoing evidence. Defendant did, however, object when Ms. Flynn, in response to a question whether she noticed anything unusual about the man, stated that he smelled of alcohol.

On appeal defendant asserts that all of Ms. Flynn's testimony, which until the above stated question was answered had been received without objection, was irrelevant and immaterial. Initially we note that defendant failed to make a proper and timely objection, i. e., one made on legitimate grounds and at the earliest opportunity once the objectionable character of the testimony became apparent. Therefore, no error in admitting Ms. Flynn's testimony was preserved for appeal. *State v. Simmons*, 500 S.W.2d 325 (Mo.App.1973); *State v. Jackson*, 500 S.W.2d 306 (Mo.App.1973). Moreover, we believe that the evidence in question was both relevant and material to facts in issue. Ms. Flynn's testimony rebuts defendant's theory of the case as asserted in his counsel's opening statement.

It establishes that defendant, contrary to his counsel's assertions, was at the hospital on an uncrowded elevator forty-five minutes to one hour before he was apprehended. Her testimony meets the test of relevancy, in that it tends to prove or disprove facts in issue. *State v. Proctor*, 546 S.W.2d 544 (Mo.App.1977); *State v. Walden*, 490 S.W.2d 391 (Mo.App.1973). It meets the test of materiality, in that it is relevant and has bearing on substantial matters in dispute. See, *State v. Roberson*, 543 S.W.2d 817 (Mo.App.1976). Its admission was proper in the exercise of the trial court's discretion. *State v. Martin*, 530 S.W.2d 447 (Mo.App.1975). Any remoteness in time between the incident in the elevator and the rape affects the weight rather than the admissibility of the testimony. *State v. Woods*, 508 S.W.2d 297 (Mo. App.1974); *State v. Taylor*, 506 S.W.2d 94 (Mo.App.1974).[1]

■ Next, defendant argues that the trial court erred in failing to sustain his motion for judgment of acquittal at the close of all the evidence because the state failed to make a submissible case on each of the elements of rape.[2] In light of the overwhelming evidence of defendant's guilt this point is chimerical. In the argument portion of his brief defendant contends that the eyewitness identifications were so inadequate that they could not support the conviction; that there was no evidence of "utmost resistance" by the prosecutrix and that there was no clear evidence of penetration—an absurd argument here.

. In determining if a submissible case was made we must view the evidence and inferences fairly derivable therefrom in the light most favorable to the verdict. All evidence to the contrary is disregarded. We do not substitute our judgment for that of the jury but only determine if there was substantial evidence to support its verdict. *State v. Longmeyer*, 566 S.W.2d 496 (1978); *State v. Johnson*, 566 S.W.2d 510 (1978); *State v. Gamache*, 519 S.W.2d 34 (Mo.App. 1975).

■ Defendant argues that the initial descriptions given by the eyewitnesses were contradictory and confusing in that not all remembered the assailant as having a mustache and rough pockmarked skin. His argument ignores the substantial agreement in descriptions given by the witnesses both immediately after the rape and at trial. Each witness positively identified defendant at trial as the rapist. Further, their description of defendant's physical attributes and dress were almost identical to one another. From the time the nurse interrupted the assault until the assailant ran into the arms of the hospital security guards either she or Dr. Hoff kept the man within their line of sight. Any minor discrepancies in the descriptions given shortly after the crime affect only the weight and credibility to be accorded the identification testimony by the jury. *State v. Radford*, 559 S.W.2d 751 (Mo.App.1977); *State v. Barnes*, 536 S.W.2d 932 (Mo.App.1976). Clearly in this instance the jury's verdict was influenced by the positive agreement among the witnesses that defendant was the rapist.[3]

---

1. In the argument portion of his brief defendant urges he was surprised when Ms. Flynn was called as a witness for the State and implies that for that reason the trial court erred in allowing her testimony. This assertion is without merit. Ms. Flynn was endorsed as a witness by the State prior to trial, and the State in its opening argument stated that Ms. Flynn would testify to the facts which she described. Defendant did not object on the basis of surprise and did not ask for a continuance. Under such circumstances defendant may not now claim he was surprised by her testimony.

2. Although he moved for a judgment of acquittal at the close of the State's case, defendant

made no such motion at the close of all of the evidence. He did, however, question the sufficiency of the evidence in his motion for a new trial and thus preserved the issue for appellate review. *State v. Rice*, 522 S.W.2d 335 (Mo. App.1975).

3. Defendant argues that the quality of the identification testimony was so tainted by pre-trial confrontations that its admission violated his right to due process of law. When defendant failed to object to the identification testimony on that ground at trial, he waived the right to raise the issue on appeal. *State v. Daniels*, 487 S.W.2d 465 (Mo.1972). Further, defendant's contention in this regard is without merit.

Furthermore, the state met is burden of proving each of the elements of rape by substantial evidence. It was required to prove penetration (however slight) of the victim's sex organs, against her will by force or threat thereof. *State v. Barnes, supra*; *State v. Ruhr*, 533 S.W.2d 656 (Mo.App.1976). The prosecutrix testified directly and convincingly that she was accosted by defendant, that her life was threatened and that he achieved penetration against her will. Defendant has the temerity to suggest that the victim did not use her utmost efforts to resist the attack upon her. Under the circumstances in which this crime occurred, defendant's argument that there was no showing of "utmost resistance" is fatuous. The victim only a few hours earlier had undergone serious abdominal surgery. At the time of the rape, though lucid, she was incapacitated in her hospital bed. She had an I.V. in her arm and a suction tube down her throat. Defendant told her he had a knife and would kill her if she did not cooperate. Where, as here, a victim is put in such fear of physical violence that her will is overcome the utmost resistance doctrine is inapplicable. *State v. Gallup*, 520 S.W.2d 619 (Mo.App.1975).

Defendant's next point alleges that comments made by the prosecutor in his closing argument concerning defendant's race and the racial setting of the trial were improper and should have been the basis for a mistrial. We set out these comments in full:

"It is an all white jury. The witnesses have all been white. For the most part there have only been white people in the courtroom all week. There may have been one black boy who has been in for one short moment watching. Mr. Stamps is black. Now, that might strike fear into your heart or any black defendant who faces twelve white jurors.

But I feel confident in this county that twelve white jurors are going to sit in judgment on a black man no differently than they would on a white man. I feel confident. I don't have any concerns along that line. The one concern I might have is that an all white jury in this particular county might be unfair to the State in their attempt to be more fair to a black than they might be to a white. They might attempt to over-react in an attempt to be extra fair. There is no requirement to do that. Mr. Stamps is not entitled to any different trial than a white man, red, oriental or any other color."

Immediately the defense counsel moved for a mistrial or alternatively that the jury be instructed to disregard the prosecutor's comments. The motion was denied, because, in the trial court's words, "of the extreme emphasis that the defendant's attorney put on the matter during the trial of the case."

In reviewing this allegation of error we are cognizant of the concomitant duties placed upon the prosecutor in fulfilling his quasi-judicial function. He must vigorously present the state's case, but he must do so in such a way as to ensure that defendant will receive a fair trial in accordance with the dictates of justice. *State v. Swenson*, 551 S.W.2d 917 (Mo.App.1977); *State v. Stocksbridge*, 549 S.W.2d 648 (Mo. App.1977). The prosecutor, therefore, must scrupulously refrain from statements calculated to engender prejudice or incite passion against the defendant. We believe the prosecutor has met his duty here.

The trial court has broad discretion in ruling on a motion for a mistrial arising out of remarks to the jury in the course of a prosecutor's closing argument. *State v. Swenson, supra.* It is only in those extraordinary situations in which the overtones of prejudice engendered by the prosecutor's comments cannot otherwise be dissipated that a mistrial should be granted. *State v. Lacy*, 548 S.W.2d 251 (Mo.App. 1977). Abuse of the trial court's discretion must be shown before an appellate court will reverse a conviction for improper argument. Where the prosecutor's deliberate statements appeal to racial prejudice or where he interjects race in a derogatory manner so as to inflame the minds of the jury, his comments are improper and may

constitute reversible error. *State v. Jackson*, 336 Mo. 1069, 83 S.W.2d 87 (1935); *State v. Franklin*, 526 S.W.2d 86 (Mo.App. 1975). The contested comments in this case, however, were not of a prejudicial or derogatory tenor. They were not made in an ·effort to misdirect the jury from an impartial consideration of the evidence or to induce the jury to convict defendant because of his race. As the trial court noted in overruling defendant's motion for a mistrial the prosecutor's innocuous comments were precipitated by and in retaliation against repeated attempts by defendant's counsel to create the appearance that defendant's race was an issue in the case. His frequent comments concerning the exclusive participation of whites in the trial of a black man were thinly veiled attempts to induce feelings of guilt in the jurors and to encourage them to give defendant favored consideration because of his race. The prosecutor's argument properly told the jury that they were to make their judgment as to the guilt or innocence of this defendant, after a fair and conscientious weighing of the evidence, the same as they would for any other person regardless of his race. As such, the argument was directed at ensuring a fair trial unaffected by racial considerations. The trial court is vested with considerable discretion in allowing the use of retaliatory arguments. *State v. Lacy, supra.* Under the circumstances of this case the court did not abuse its discretion in light of defense counsel's comments.

In addition defendant argues that this quoted portion .of the state's closing argument contains an improper reference to the defendant's religion. In his brief defendant quotes the final sentence as follows: "Mr. Stamps is not entitled to any different trial than a white man, red, yellow or *gentile* or any other color." (emphasis added) The record does not contain the word gentile or any other even arguable reference to the religion of defendant. Defendant's allegation of error, therefore, is not supported by the record and is without merit.

Defendant next argues that the trial court erred when it permitted the prosecuting attorney to argue circumstantial evidence as a factor in the case in that there was no circumstantial evidence of guilt and there was no circumstantial evidence instruction.[4] This argument is likewise without merit. As to the latter challenge, defendant did not request a circumstantial evidence instruction, and none is required to be given unless the entire case is based on circumstantial evidence. Rule 20.02 V.A.M.R.; MAI–CR 3.42 Notes on Use. As to the former challenge—although there is substantial directed evidence of defendant's guilt—the record is also replete with circumstantial evidence. See note No. 4, *supra.* The prosecutor's remarks regarding circumstantial evidence were in reference to evidence properly admitted; therefore, his argument was legitimate. *State v. Simone*, 416 S.W.2d 96 (Mo.1967); *State v. Menard*, 331 S.W.2d 521 (Mo.1960); *State v. Swenson, supra.*

Defendant's final point of error—like the previous one—asserts that the prosecutor was improperly allowed to argue

---

4. The challenged comments of the prosecutor are as follows:

"You have three people that have come in here and pointed to Willie Stamps and said he is the rapist. [The victim] says that's him—that is he—[the nurse] says that is he, Dr. Hoff said that's he. But even if they couldn't, circumstantial evidence in this case would prove Willie Stamps guilty beyond a reasonable doubt.

Mr. Shaw [Defendant's counsel]: Just a second. I didn't hear that.

Mr. Westfall [prosecutor]: I said circumstantial evidence in this case would prove his guilt beyond a reasonable doubt.

Mr. Shaw: Your Honor, there is no circumstantial evidence in this case. It is direct testimony by eyewitnesses, and you have not instructed the jury about circumstantial evidence.

The Court: Overruled.

Mr. Westfall: He said he grabbed a paper bag, and that's circumstantial evidence. He was fumbling with his trousers. Dr. Hoff saw his fly open and Mr. Lindberg saw his fly was open and his belt was loose. That's circumstantial evidence. The dark suit and trousers and white shoes that's all circumstantial evidence. And he was wearing those same items of clothing 30 seconds later when he was apprehended in the stairwell."

evidence not in the record. He attacks the following comments made by the prosecutor during his closing argument:

"As to what physical exhibits were put into this trial, that wasn't the responsibility or decision of the police. That was my decision as prosecutor. I put in front of you people what evidence I thought was relevant and what evidence there was to indicate the innocence or guilt of Mr. Stamps. Are you going to assume for a minute that if I brought in the white loafers that—

Mr. Shaw: Well, Judge, I am going to object to now saying what would happen if he brought in the white loafters (sic). There is no—I am going to ask that the jury be discharged and a mistrial declared. There are no white loafers.

Mr. Westfall: Well now, Judge, I am going to object to that.

Mr. Shaw: If there are, he should have brought them in.

Mr. Westfall: There are white loafers.

Mr. Shaw: I am going to ask that the jury be discharged and a mistrial declared.

If there are, you should have brought them in.

The Court: All right. Sit down, both of you.

You (sic) objection is overruled. Your motion for a mistrial is denied."

Defendant contends that these comments were improper because they had the effect of informing the jury that the white loafers did exist and that the jury was to accept their existence as fact even though the shoes had not been introduced into evidence in the case. It is true that the shoes were not introduced into evidence; however, eyewitnesses testified that the rapist wore white shoes. When defendant was arrested, he wore white shoes. The existence of the shoes therefore was in evidence and was a proper subject for the State's closing argument. Moreover, the prosecutor's remarks were made in response to defense counsel's closing arguments. During his argument, defense counsel on three separate occasions questioned the ex-

istence of the shoes and asked why they had not been produced by the state. Prosecutors are permitted wide latitude to reply to defense counsel's argument which is directed to discrediting the prosecution's case in the eyes of the jurors. *State v. Rodgers*, 525 S.W.2d 447 (Mo.App.1975). The trial court has broad discretion in permitting the use of retaliatory arguments. *State v. Lacy, supra*. We find no abuse of discretion here.

The conviction is affirmed.

WEIER and KELLY, JJ., concur.