**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James Earl WORTHAN,
Defendant-Appellant.**

#### No. 41464.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 9, 1982.

Motion for Rehearing and/or Transfer
Denied April 16, 1982.

Application to Transfer Denied
May 17, 1982.

---

Mary K. Wefelmeyer, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

A jury found defendant guilty of murder in the second degree and the court sentenced him to thirty years imprisonment. Defendant appeals. We affirm.

Shirley Regans, defendant's girlfriend, and Leon Hall, the murder victim, worked at Perfection Manufacturing Company in the City of St. Louis. One day at work, Shirley Regans and Leon Hall engaged in an argument which lasted throughout the day. At the end of that workday, defendant arrived at the plant in Shirley's car to pick up Shirley. After his arrival, defendant was apparently approached by one of Shirley's co-workers who told defendant about the argument between Shirley and Leon. Subsequently, Leon and defendant began to argue. At some point during or after the argument, Leon turned and began to walk toward his car. Defendant got into Shirley's car, followed Leon and bumped him with the car. Defendant then drove down the street, made a U-turn and came back up the street driving the car toward Leon at a high rate of speed. As the car approached Leon, he jumped, hit the windshield of the car with his feet and rolled off of the car. Defendant then fired several shots at Leon. The bullets struck Leon in the chest and killed him.

In his first point, defendant contends the state improperly commented on defendant's failure to call Shirley Regans as a witness.

During trial, the prosecutor [1] requested the court to call Shirley as the court's witness because he could not vouch for her credibility and, according to him, "it would be a miscarriage of justice if she did not testify." Defense counsel agreed that "a miscarriage of justice would result" if Shirley were not called, and he stated he "would not object to the Court calling [her] as the Court's witness" as long as it was made clear that she was "the Court's witness and not the prosecution's witness." Shirley was called as the court's witness and the jury was informed of that fact. During closing argument, the prosecutor stated that he vouched for the credibility of his witnesses but that he did not call Shirley Regans as his witness. He followed this remark with the rhetorical question and answer: "You know who else didn't call Shirley Regans? It's [defense counsel]." Defendant argues this was an improper comment on his failure to call Shirley.

■ Defendant first argues that Shirley was not "peculiarly available" to him and, therefore, it was improper for the state to suggest that adverse inferences could be drawn from defendant's failure to call her. Defendant's argument misses the · mark. Whether Shirley was peculiarly available to defendant is not relevant to the prosecutor's comments. Admittedly, an adverse inference may be drawn from the failure of a party to call a witness who is peculiarly available to that party and "who would be reasonably expected to give testimony in his favor." *State v. Wilkerson*, 559 S.W. 228, 229 (Mo.App.1977). The adverse inference drawn from this failure is that the witness would have testified unfavorably if he had been called. *Id.* at 229. This adverse inference, thus, serves as a substitute for the absent testimony. Here, however, the prosecutor was not suggesting what Shirley's testimony would be if she were called. Obviously, he could not sensibly make that suggestion. Shirley was called and she did testify. The prosecutor was merely suggesting that Shirley's testimony was not credible.

Defendant also complains the prosecutor's "comments were extremely prejudicial and unnecessary . . . [because] Shirley Regans was called as a Court's witness prior to any possible defense testimony." Defendant fails to define the explicit prejudice allegedly worked against him. His complaint may be that because Shirley was called as the court's witness, he was precluded from calling her, vouching for her and establishing her credibility. If this is defendant's reasoning, his logic conveniently omits his agreement to have the court call Shirley as its witness. Although we could conjure up reasons why the prosecutor's remarks were inappropriate, we have not been shown any reason to conclude his remarks were prejudicial.

■ Defendant's second complaint is also an attack against the prosecutor's closing argument. During the first half of his closing argument, the prosecutor addressed defendant's claim of self-defense. In his response, defense counsel expressly abandoned the claim of self-defense. In rebuttal, the prosecutor argued that defense counsel had "set him up" for an unnecessary argument against self-defense. Defendant now contends that an instruction on self-defense had to be given whether requested or not and, therefore, the prosecutor telling the jury that defense counsel requested this instruction was tantamount to the prosecutor telling "the jury to believe the defense counsel misled the state into believing self-defense would be used." "This," defendant concludes, "violated [his] rights to a fair and impartial trial . . . ." We disagree.

The prosecutor's conclusion that defense counsel would argue self-defense in closing argument was not unfounded. In his opening statement, defense counsel indicated defendant shot Leon Hall only after Leon had initiated the confrontation with defendant and only after Leon had smashed the windshield in the car defendant was driving. During trial, defense counsel attempted to elicit testimony to support this scenario.

1. In this case, the prosecutor was an assistant    circuit attorney.

At the close of the case, a self-defense instruction was given. With these background facts, the prosecutor spent a good deal of time in the first half of his closing argument arguing against the claim of self-defense. When defense counsel, in his argument, expressly denied any reliance on self-defense, the prosecutor apparently concluded that the jury could have been confused by his argument attacking the claim of self-defense. Therefore, in his rebuttal portion of his argument, the prosecutor proceeded to explain to the jury why he had argued against defendant's claim of self-defense. We find no error in the prosecutor making this explanation.

Admittedly, as part of his explanation the prosecutor did say:

"Had I known that self-defense was not going to be an issue in this case, had I known that he would not tell you that it was not self-defense, obviously I wouldn't have argued self-defense, *but I'm not the one that requested the self-defense instruction. He is the one that requested it.* It was in there. It was told to you, so I have to talk about it." (Emphasis added).

However, the prosecutor's remarks were invited by defense counsel. In his closing argument, defense counsel had accused the prosecutor of "getting" the self-defense instruction to "confuse" the jury. More explicitly, defense counsel stated:

"Why did he spend over half of his time talking about it? *Because what he does, he gets the self-defense instruction; the self-defense instruction tells you what type of killing is the right thing to do.* What James Worthan did was not the right thing to do, then it must be murder in the second degree. I think you all can see right through that from the state of my argument." (Emphasis added).

In light of defense counsel's remarks, it becomes clear the prosecutor was simply setting the record straight. He simply was responding that it was not him but defense counsel who requested the self-defense instruction and that his argument against self-defense was not for the purpose of confusing the jury, but, rather, it was an argument he would not have made had he known the claim of self-defense was going to be abandoned. We find the prosecutor's comments to be permissible retaliation to defense counsel's argument. *See, e.g., State v. Stamps,* 569 S.W.2d 762, 768 (Mo. App.1978).

Defendant next argues that the trial court erred in refusing to grant a mistrial when the victim's brother, Terry Hall, was asked whether the victim was a violent man and he responded: "No." Defendant contends that self-defense was not an issue in the case and, therefore, the victim's reputation for peace or violence was not relevant.[2] Defendant's complaint has not been preserved for our review.

The colloquy in issue occurred like this:

"[Prosecutor] Q. Mr. Hall, was your brother a violent man in any way.

A. No.

[Defense Counsel]: I'm going to object, Your Honor.

COURT: Sustain the objection."

Defense counsel then moved for a mistrial which was overruled.

■■■ Defense counsel's objection was not made until after the answer was given and, thus, his objection was not timely. *E.g., State v. Phillips,* 480 S.W.2d 836, 837 (Mo.1972). Moreover, there is no showing the witness' answer was given so quickly that defense counsel was unable to voice his objection between the question and answer. *See State v. Simmons,* 500 S.W.2d 325, 328–329 (Mo.App.1973). If this in fact did happen, defense counsel should have moved to strike the answer. In the absence of a motion to strike, no error is preserved for our review. *State v. Taylor,* 408 S.W.2d 8, 11 (Mo.1966); *State v. Velanti,* 331 S.W.2d 542, 546–547 (Mo.1960). Furthermore, a mistrial is a drastic remedy which is grant-

2. Both parties assume the inquiry was about the victim's "reputation."

ed only in extraordinary circumstances. *State v. Morgan*, 592 S.W.2d 796, 808 (Mo. banc 1980). Defendant has not shown that the present circumstance warranted a mistrial.

■ In his final point, defendant contends the court committed plain error in submitting a converse instruction to the self-defense instruction. The converse instruction in question is identical to the converse submitted in *State v. Phillips*, 583 S.W.2d 526, 529–530 (Mo. banc 1979).[3] In *Phillips*, the Court found the submission of this instruction to be plain error because it was not an MAI and because it submitted a declaration of what the law is not rather than what the law is. The Court noted that:

"Only in the most extreme instances does it become necessary to clarify what is not an element. Even when such an instance is apparent, it is generally for the Rules Committee and the Court to make this change ... and not for the individual proponent to submit an unapproved instruction on an ad hoc basis when an approved instruction is available." *Id.* at 530.

Literal application of the holding in *Phillips* would mandate a reversal of the present case. *Phillips*, however, differs from the present case. In *Phillips*, it seems clear the defendant neither shifted nor abandoned his theory of self-defense. In the present case, defense counsel, in his closing argument, repeatedly denied any reliance on the claim of self-defense.[4] Since defense counsel expressly abandoned the claim to self-defense, a converse to the self-defense instruction could not have prejudiced defendant. We, therefore, find this final point to be without merit.

Judgment affirmed.

SMITH and SIMON, JJ., concur.

3. This instruction reads:
   "The Court instructs the jury that law of self-defense does not imply the right of attack, nor will it permit acts done in retaliation or for revenge. Therefore, if you believe and find from the evidence beyond a reasonable doubt that the defendant sought, brought on or voluntarily entered into a difficulty with Leon Hall for the purpose of wreaking vengeance upon him, or if you shall find and believe from the evidence beyond a reasonable doubt James Earl Worthan shot at Leon Hall at a time when he had no reasonable apprehension of immediate and impending injury to himself, and did so from a spirit of retaliation and revenge for the purpose of punishing Leon Hall, then the defendant cannot avail himself of the law of self-defense, and you should not acquit the defendant on that ground."

4. For example, defense counsel stated in his closing argument:
   "From the beginning of the case, you heard me make my opening statement, and he [the prosecutor] heard me make my opening statement, and I never once, never once, stood before this jury and tried to tell them that I was going to come in here and claim self-defense, and I think you all remember that I have never in the course of this trial made any implication that I was claiming self-defense ...
   From the beginning of this case, there was only one disputed element in this case, and I told you what it would be on my opening statement. If you find, if you have a reasonable doubt that the disputed thing they have to prove is there, you can't find him guilty of murder second degree. You have find him guilty of manslaughter because that's what the man is guilty of.
   . . . .
   To sum it all up, what Leon Hall did that day, and it was pretty outrageous, he didn't deserve to get killed for it, and I'm not telling you that, and I never told you that, and you all know I haven't told you that throughout the course of this entire trial. He didn't deserve to get killed for it. He didn't deserve to get killed for it.
   It's not self-defense. It's not not guilty.
   . . . ."